1  EDMUND G. BROWN JR.
Attorney General of the State of California
2  DANE R. GILLETTE
Chief Assistant Attorney General
3  GERALD A. ENGLER
Senior Assistant Attorney General
4  JULIET B. HALEY
Deputy Attorney General
5  PEGGY S. RUFFRA
Supervising Deputy Attorney General
6  State Bar No. 117315
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA 94102-3664
   Telephone: (415) 703-1362
8  Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10        IN THE UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14  **TRAVELL BROWN,**                          C 08-853 WHA

                              Petitioner,   **ANSWER TO ORDER TO SHOW
15                                            CAUSE**

16        v.

17  **ROBERT HOREL, Warden,**

                              Respondent.
18

19        Respondent hereby provides this answer to the Order to Show Cause why the petition for

20  writ of habeas corpus should not be granted.

21                              **I.**

22                          **CUSTODY**

23        Petitioner is lawfully in the custody of Robert Horel, Warden of Pelican Bay State Prison,

24  as a result of a conviction by a Del Norte County jury of resisting an executive officer by force or

25  violence.  The trial court sentenced petitioner to three years in prison.

26                              **II.**

27                      **PROCEDURAL ISSUES**

28        The claims in the petition are exhausted.  The petition is timely within the meaning of 28

1  U.S.C. § 2244(d).

2  ## III.

3  ## GENERAL AND SPECIFIC DENIALS

4  Respondent denies that the state court's ruling was based on an unreasonable

5  determination of fact or was contrary to or involved an unreasonable application of clearly

6  established United States Supreme Court law.  Respondent specifically denies that (1) petitioner was

7  denied due process as a result of the joinder of Counts I and II; (2) he was denied due process

8  because he was required to appear at trial in shackles without sufficient inquiry or justification; (3)

9  the absence of a unanimity instruction on Count II violated state law, lowered the prosecution's

10  burden of proof, and denied petitioner the right to a unanimous verdict by at least six jurors; (4) the

11  guilty verdict on Count II was based on uncharged acts; and (5) the cumulative effect of the

12  constitutional errors alleged in Claims I through IV violated due process.

13  ## IV.

14  ## LODGED DOCUMENTS

15  Respondent has lodged concurrently with this answer the following exhibits:  (1) Clerk's

16  Transcript (3 volumes); (2) Reporter's Transcript (18 volumes); (3) Appellant's Opening Brief; (4)

17  Respondent's Brief; (5) Appellant's Reply Brief; (6) Opinion by California Court of Appeal; (7)

18  Petition for Review; and (8) Order denying review by California Supreme Court.

19  ## V.

20  ## INCORPORATION BY REFERENCE

21  Respondent hereby incorporates by reference the accompanying memorandum of points

22  and authorities in support of this answer.

23  ## VI.

24  ## CONCLUSION

25  Respondent respectfully requests that the petition for writ of habeas corpus be denied.

26

27

28

*Brown v. Horel* - Answer to Order to Show Cause - C 08-853 WHA

2

1      Dated:  March 20, 2008

2                    Respectfully submitted,

3                    EDMUND G. BROWN JR.
Attorney General of the State of California

4                    DANE R. GILLETTE
Chief Assistant Attorney General

5

6                    GERALD A. ENGLER
Senior Assistant Attorney General

7                    JULIET B. HALEY
Deputy Attorney General

8                    **/s/ Peggy S. Ruffra**

9

10                  PEGGY S. RUFFRA
Supervising Deputy Attorney General

11                  Attorneys for Respondent

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Brown v. Horel* - Answer to Order to Show Cause - C 08-853 WHA

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   JULIET B. HALEY
    Deputy Attorney General
5   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
6   State Bar No. 117315
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-1362
8    Fax: (415) 703-1234
     Email: peggy.ruffra@doj.ca.gov
9   Attorneys for Respondent

10                  IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13
    TRAVELL BROWN,                          C 08-00853 WHA
14
                             Petitioner,
15
              v.
16
    ROBERT HOREL, Warden,
17
                             Respondent.
18

19
       MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER
20

21

22

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
Attorney General of the State of California
2  DANE R. GILLETTE
Chief Assistant Attorney General
3  GERALD A. ENGLER
Senior Assistant Attorney General
4  JULIET B. HALEY
Deputy Attorney General
5  PEGGY S. RUFFRA
Supervising Deputy Attorney General
6  State Bar No. 117315
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA 94102-3664
   Telephone: (415) 703-1362
8  Fax: (415) 703-1234
   Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10             IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  **TRAVELL BROWN,**                        C 08-00853 WHA

15                            Petitioner,    **MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN
16           **v.**                          SUPPORT OF ANSWER**

17  **ROBERT HOREL, Warden,**

18                            Respondent.

19

20                   **STATEMENT OF THE CASE**

21         On May 27, 2003, the Del Norte County District Attorney charged petitioner in Count I

22  with battery by an inmate on a non-inmate (Cal. Penal Code § 4501.5), and in Count II with resisting

23  an executive officer by force or violence (Cal. Penal Code § 69), along with a prior strike conviction

24  and four prior prison terms. Exh. 1, Clerk's Transcript ("CT") 14-15. The jury convicted petitioner

25  of Count II and found the enhancements true, but was unable to reach a unanimous verdict on Count

26  I. The trial court subsequently granted the prosecution's motion to dismiss Count I. CT 599-611.

27         On December 2, 2004, the trial court granted petitioner's motion to strike the

28  enhancements and sentenced him to three years in prison, consecutive to the 13-year sentence he

1  was already serving for a drug offense.  CT 678-679, 683-684.[1/]

2         On August 4, 2006, the California Court of Appeal affirmed the judgment of conviction.

3  Exh. 6.  On November 15, 2006, the California Supreme Court denied review.[2/]  Exh. 8.  Petitioner

4  did not seek certiorari review in the United States Supreme Court.

5         On February 7, 2008, petitioner, through counsel, filed the current petition in this Court.

6

7                              **STATEMENT OF FACTS**

8         The California Court of Appeal summarized the facts of the crimes as follows.  This

9  summary is presumed correct.  *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002); 28

10  U.S.C. § 2254(e)(1).

11  I. *Count I — Battery Charge*

12  On September 25, 2002, Correctional Officer Tammy Hill was escorting appellant from
    his cell to a holding cell so he could use an asthma inhaler.  Once in the holding cell,
13  appellant refused to use his inhaler and asked to see a sergeant.  Officer Hill notified
    Sergeant Wright and then assisted in moving another inmate from one cell to another cell.
14
    As she passed the holding cell, appellant said to her, "Fuck you, bitch," and spat on her.
15  His sputum landed on her face, neck, and vest.

16  Officer Hill went to the medical clinic for treatment.  She followed the advice of the
    attending nurse to wash her face with anti-bacterial soap, but declined the advice to have
17  a blood test for hepatitis-B or a tetanus shot.  The attending nurse noticed some substance
    on the right side of Officer Hill's vest.
18
    II. *Count 2 — Resisting an Executive Officer*
19
    Four days later Officer Joann Morrison was on duty in a control booth.  From her vantage
20  point she could see an area containing cells and a rotunda area.  The control booth officer
    controls the doors to the cells.  She opened appellant's cell door to allow Officers Waycott
21  and Gavin to handcuff him before escorting him to the shower.  For the safety and security
    of the officers, prison protocol requires inmates to back out of their cells.  When appellant
22  turned to face forward, the officers instructed him to "'Turn back around.  Face the back
    of the cell.  Come out backwards.'"  Appellant responded to Officer Waycott, who is
23  female, "'Fuck you, bitch.  I'll come out any way I want to.'"  Appellant then proceeded
    to the shower, which is adjacent to his cell.  Control booth Officer Morrison notified her
24

25       1.  Although petitioner is not yet serving the sentence on the judgment he challenges here,
26  he satisfies the custody requirement.  *Peyton v. Rowe*, 391 U.S. 54 (1968).

27       2.  The court denied review without prejudice to any relief petitioner might be entitled to
    after the United States Supreme Court decided *Cunningham v. California*, No. 05-6551.  Exh. 8.
28  Petitioner did not raise a *Cunningham* claim in this petition.

supervisor about appellant's remark to Officer Waycott.  Sergeant Bosley and Officers Holt and Hall responded.  Officer Hall applied handcuffs on appellant, and these three officers ordered him to turn around, face the rear wall of the shower, and back out.  Appellant spun around, faced the officers, and said, in effect, "'You don't tell me what to do.  I'm not your son.'"  He refused the numerous orders to turn around to face the rear wall.  When the officers grabbed him to have him turn around, appellant began twisting, jerking, and kicking, struggling to break free of their hold.  Officer Hall pushed him into a prone position on the ground.  One officer held appellant's legs to prevent him from kicking so another officer could apply leg restraints.

After appellant was in handcuffs and leg irons, Officer Hall and Sergeant Bosley helped him to his feet and brought him to the rotunda for a medical examination to determine if he had any injuries before he was returned to his cell.  As the medical technician attempted to examine him, he said, "'Fuck you, bitch.  I ain't talking to you.  Just get away from me.'"  Officers Hall and Holt and another officer, Walker, took him to his cell, where Officer Walker removed his leg irons.  Appellant stuck his foot into his cell doorway to prevent the door from closing.  The door closed after Officer Walker pushed appellant's foot into the cell.  Appellant attempted to pull his handcuffs into the cell, but Officers Holt and Hall were able to control his hands by removing the handcuffs through the "cuff port," a small opening in the cell door that allows an officer to cuff and uncuff an inmate who is in the cell from outside the cell.  During this procedure appellant was not in any position to harm the officers' hands.  The time span from the conclusion of appellant's shower to the removal of the handcuffs was approximately 20-30 minutes.

Exh. 6 at 1-3.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  Under AEDPA, the federal court has no authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable——a substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (state court opinion must be "objectively unreasonable" to warrant habeas relief).  The petitioner bears the burden of showing that the state court's decision was unreasonable. *Visciotti*, 537 U.S. at 25.

**ARGUMENT**

**I.**

### JOINDER OF COUNTS ONE AND TWO DID NOT VIOLATE DUE PROCESS

Petitioner contends he was denied due process as a result of the joint trial of Counts I and II. Petition at 3-5.

Although the prosecutor did not object to the defense motion to sever the charges, the trial court denied the motion because the two charges were "of the same class" and occurred under similar circumstances. Exh. 2, Reporter's Transcript ("RT") 10/9/2003 2-7.

The California Court of Appeal rejected petitioner's claim that joinder of the two counts violated due process. The court noted that under Cal. Evidence Code § 1101(b), evidence of another offense is admissible to show common design or plan, and that a lesser degree of similarity of the acts is required for that purpose than to prove identity. Exh. 6 at 5. The court held:

> In this case the question was not *who* committed the offenses but *whether* appellant committed the alleged acts and, if so, whether those acts constituted the crime charged. Hence, identity was not in issue but presence of a common plan or design was. The two offenses charged in the information were sufficiently similar to be relevant evidence as to his repeated plan or design in engaging in disruptive conduct. According to the officers' incident reports and the preliminary hearing testimony, both offenses involved assaultive acts on correctional officers during the course of escorting appellant to or from personal health/hygiene-related matters (asthma therapy, shower), resistance to directives from the officers, and disparaging comments to them. The common factors of both incidents suggest appellant engaged in a pattern of acts intended to thwart authority and undermine officer control by a combination of angry verbal, and physically abusive and defiant, outbursts. Thus, the evidence was cross-admissible on this theory.

> Considering the other factors relevant to assessing prejudice from joinder of the two counts, appellant has not demonstrated prejudice from the denial of his motion to sever. Neither of the charged offenses was of such a heinous, shocking or outrageous nature that their joinder was likely to inflame the jury. (*Gutierrez, supra*, 28 Cal.4th at p. 1120.) Nor, when the severance motion was made, did the preliminary hearing testimony or the allegations in the information imply that one charge was disproportionately weaker or stronger than the other, such that one was being joined with another to produce a spillover effect that unfairly strengthened the weak case. (*Ibid*.) Indeed, as is manifest from the evidence and verdict, the joinder cannot be seen as bootstrapping a weak case to a strong case so that the effect of the aggregate evidence of both charges was likely to have altered the outcome of the charges. Appellant was convicted of only one charge, count two, preventing an officer from the performance of his duty (the shower incident), and the evidence of that charge was overwhelming.

> In short, appellant has not demonstrated that the order denying his severance motion was an abuse of discretion at the time it was made, nor that joinder caused gross unfairness at

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

4

1   his trial.  (See *People v. Stitely, supra*, 35 Cal.4th at p. 533.)

2   Exh. 6 at 5-6, emphasis in original.

3        The state appellate court's conclusion was not objectively unreasonable.  The United

4   States Supreme Court has held that "[i]mproper joinder does not, in itself, violate the Constitution."

5   *United States v. Lane*, 474 U.S. 328, 336 n. 8 (1986).  "Rather, misjoinder would rise to the level

6   of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

7   Amendment right to a fair trial."  *Id*.  In *Davis v. Woodford*, 333 F.3d 982, 991 (9th Cir. 2003), the

8   Ninth Circuit summarized the law relating to severance of charges as follows:

> We may grant habeas relief on a joinder challenge only "if the joinder resulted in an unfair trial.  There is no prejudicial constitutional violation unless 'simultaneous trial of more than one offense . . . actually rendered petitioner's state trial fundamentally unfair and hence, violative of due process.'"  *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001), *cert. denied*, 534 U.S. 847, 151 L. Ed. 2d 69, 122 S. Ct. 112 (2001) and *cert. denied*, 534 U.S. 943, 151 L. Ed. 2d 241, 122 S. Ct. 322 (2001) (quoting *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991))  (omissions and modifications in original).  The requisite level of prejudice is reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict."  *Sandoval*, 241 F.3d at 772 (citing *Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir. 1998)).  In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another.  *See, e.g.*, *Sandoval*, 241 F.3d at 772; *Bean*, 163 F.3d at 1084.

17        Here, the state appellate court found that the two counts were cross-admissible under

18   California law.  That interpretation of state law cannot be revisited on federal habeas review.  *Estelle*

19   *v. McGuire*, 502 U.S.62, 67 (1991); *Larson v. Palmateer*, __ F.3d __, 2008 U.S. App. LEXIS 3097

20   (9th Cir. Feb. 13, 2008) ("The correctness of the trial court's evidentiary ruling as a matter of state

21   law is irrelevant to our review"); *see Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state

22   court has the last word on the interpretation of state law.").[3/]  Further, it was plainly reasonable for

23   the state appellate court to conclude that there was no "spillover effect" that unfairly strengthened

24   the weaker count, because the jury did *not* convict petitioner of Count I.  "The best evidence of the

---

3. Petitioner suggests that the prosecutor improperly asked the jury to "weigh the evidence on the two counts in concert."  Petition at 4.  The prosecutor argued only that the two counts involved "a similar M.O.," RT 11/8/2004 170, which was the reason the state appellate court found they were cross-admissible.  That argument was not erroneous.

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

jury's ability to compartmentalize the evidence is its failure to convict all defendants on all counts." *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987); *Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000) (defendant could not show trial was unfair due to consolidation of charges because jury acquitted him of two counts). Petitioner speculates that the jury combined the evidence on both counts and then reached a compromise by convicting him of only one charge, Petition at 5, but the more reasonable explanation is that the jury convicted petitioner of Count II because the evidence to support that charge was overwhelming.

Petitioner's reliance on *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998), a capital case where the Ninth Circuit reversed in part for improper joinder of charges, is unavailing.[4/] *Bean* was a pre-AEDPA case that the federal court reviewed de novo, not under the deferential standard of review mandated by 28 U.S.C. § 2254(d); the California Supreme Court found that the charges were *not* cross-admissible in that case; the evidence supporting one incident was much stronger than the evidence supporting the other; and the jury convicted Bean of all charges, indicating it was unable to compartmentalize the evidence. None of those circumstances was present here.

Finally, any error was harmless because it had no substantial and injurious effect on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Fry v. Pliler*, 127 S.Ct. 2321 (2007). As noted, Count I was ultimately dismissed, and the evidence supporting Count II was compelling. Nor was the evidence on Count I particularly shocking or inflammatory. Accordingly, no prejudice resulted from the joinder of charges.

## II.

### PETITIONER WAS NOT IMPROPERLY SHACKLED

Petitioner contends he was denied due process because he was required to appear at trial in shackles without sufficient inquiry or justification. Petition at 5-6.

Prior to trial, on July 24, 2003, the prosecutor asked the trial court to order petitioner to

---

4. One judge dissented from the holding that the joinder violated due process. *Bean*, 163 F.3d at 1090-1092 (O'Scannlain, J., dissenting).

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

appear at trial in "full restraints, but with an extended chain so that he could write." RT 7/24/2003 at 7. Defense counsel objected and indicated she thought petitioner's hands should be free. *Id*. The prosecutor then offered Sergeant Ken Thomas as an expert in courtroom security. The California Court of Appeal summarized that evidence as follows.

> Sergeant Thomas gave the following testimony: He reviewed appellant's Department of Corrections file, which contains all information concerning appellant's commitment offenses and in-prison activity. The Department uses a point system to classify inmates by level of security. An inmate reaches level 4, the highest level, at 53 points. Appellant had received 264 points since returning to the Department of Corrections three years earlier, including 22 citations for serious rules violations. He had received multiple citations for batteries on staff and peace officers, and multiple citations for willful delay, refusing orders, threats of force or violence against public officials, and gassing peace officers with an unknown liquid. He also had multiple citations for destruction of state property, and single citations for arson, possession of inmate-manufactured alcohol and possession of contraband. Given this history, Sergeant Thomas had serious concerns for the security of the courtroom personnel. Sergeant Thomas acknowledged that appellant had not attacked anyone with his hands in the past year, but observed that he had been housed in the SHU (Security Housing Unit), where policy requires him to be in handcuffs any time he is moved.

Exh. 6 at 6-7; *see* RT 7/24/2003 8-18. The trial court granted the motion to have petitioner in full physical restraints except for an extended chain that would allow him to write. RT 7/24/2003 18. The court further ordered the court staff to bring petitioner and the jurors in and out of the courtroom in such as way as to minimize the likelihood that the jurors would see the restraints. The court noted that there was "a solid panel across the front of the counsel table which blocks the view of the jurors while they're seated in the jury box of the defendant's lower body," and although it was possible that they might see the restraints they would be unobtrusive. RT 7/24/2003 19.

Subsequently, new defense counsel was appointed. On September 7, 2004, that attorney moved to allow petitioner to appear at trial without shackles. CT 419. On September 9, 2004, the prosecutor reminded the court that it had already granted the prosecution's shackling motion. The court told counsel he could seek a modification of the shackling order if there was a change of circumstances, but otherwise the existing ruling would remain intact. RT 9/9/2004 20-21. Counsel did not revisit the issue.

At defense counsel's request, the jury was instructed with CALJIC No. 1.04: "The fact that physical restraints have been placed on Defendant Brown must not be considered by you for any purpose. They are not evidence of guilt, and must not be considered by you as any evidence that

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

7

1  he is more likely to be guilty than not guilty.  You must not speculate as to why restraints have been

2  used. In determining the issues in this case, disregard this matter entirely."  CT 618.

3              The California Court of Appeal rejected the shackling claim as follows.

4      A defendant cannot be subjected to physical restraints of any kind while in the jury's
       presence absent a showing of a manifest need for such restraints. (*People v. Mar* (2002)
5      28 Cal.4th 1201, 1216.)  If necessary, the restraints should be as unobtrusive as possible.
       (*Id*. at p. 1217.)

6

7      The showing of nonconforming behavior in support of the court's decision to impose
       restraints must appear as a matter of record.  (*People v. Mar, supra*, 28 Cal.4th at p. 1216.)
8      Imposition of restraints absent a record showing violence, threats of violence, or other
       nonconforming conduct constitutes an abuse of discretion.   (*Ibid*.)   Although the
9      prosecutor may bring matters bearing on the issue of restraints to the court's attention, it
       is the court's function, not the prosecutor's, to initiate whatever procedures the court
10     deems sufficient to allow it to make a due process determination of record that restraints
       are necessary. "The record must demonstrate that the trial court independently determined
11     on the basis of an on-the-record showing of defendant's nonconforming conduct that
       'there existed a manifest need to place defendant in restraints.'"  (*Id*. at p. 1218, quoting
12     *P. v. Hill* (1998) 17 Cal.4th 800, 842.)  When made in accordance with the guidelines set
       forth by our Supreme Court in *Mar* and its predecessors, the trial court's determination
13     can be challenged on review only on a showing of a manifest abuse of discretion.  (*Id*. at
       p. 1217.)

14     We find no abuse of discretion in the court's July 24, 2003 order.  Sergeant Thomas
       provided detailed information regarding appellant's lengthy documented history of
15     threats, assaultive behavior, and refusal to obey authority.  This information allowed the
       court to reach its own determination of a manifest need to impose restraints for the
16     security of courtroom personnel, based on the nature and seriousness of appellant's past
       combative conduct toward law enforcement officials.  It did not make its determination
17     based simply on Sergeant Thomas's opinion or unsubstantiated comments.  It was
       presented with a factual basis from which it could reasonably infer that appellant posed
18     a potential threat of disruption to any figure of actual or perceived authority in the
       criminal judicial system, e.g., judge, attorneys, jurors, bailiffs, court reporters.  It could
19     also infer that appellant had not struck anyone with his hands recently because he had
       been in restricted custody and in handcuffs whenever escorted outside his cell.  Furthermore,
20     appellant's first attorney, Schlotan, challenged only the level of restraint, not
       that some form of restraint was warranted, and his second attorney, Zipperer, did not
21     present any new facts as to why, in the intervening year, shackling was no longer justified.

22     Even assuming the court's shackling order was an abuse, either when it was originally
       made in July 2003 or when it was effectively restated in September 2004, we perceive no
23     prejudicial error. Our Supreme Court has consistently found unjustified or unadmonished
       shackling harmless when there is no evidence the jury saw the restraints or had only a
24     brief observation. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1213; *People v. Tuilaepa*
       (1992) 4 Cal.4th 569, 584.)  If restraints must be imposed, the court is to instruct sua
25     sponte that the restraints should have no bearing on the defendant's guilt.  (*People v.
       Duran* (1976) 16 Cal.3d 282, 291-292, 127 Cal. Rptr. 618.) If the restraints are concealed,
26     the court should not so instruct unless requested to do so by the defendant, because the
       instruction could invite initial attention to restraints and create prejudice that would
27     otherwise be avoided.  (*Ibid*.)  The court's comments after it made its shackling order
       imply that the jury would have, at most, only a glimpse of any restraints.  It stated
28     explicitly that, as a precaution to avoid prejudice, appellant would be brought in and out

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

of the courtroom in a manner to minimize the jurors seeing him in restraints. It also noted that the defense table was constructed with a solid panel blocking the jurors' view of appellant's lower body, and that, while there was a possibility they would see some physical restraint, generally his shackles would be unobtrusive. It ordered appellant to be dressed in civilian clothes, and it gave defense counsel the choice of admonishing the jurors not to consider the restraints or of saying nothing, noting that an admonition would only call attention to something the jurors might otherwise not notice. Notwithstanding these precautionary physical arrangements designed to obscure the jurors' view, appellant elected to have the jury admonished regarding the restraints. He cannot therefore complain of prejudice resulting from the shackling, insofar as he was responsible for bringing to the jury's attention a matter to which it might otherwise have given no notice or thought.

In any case, nothing in the record suggests the restraints were regularly on view to the jury. Appellant did not testify, and the record nowhere suggests he behaved in any way to call particular attention to his restraints, such as raising his hand to ask a question. Nor is there any indication the court failed to adhere to its directives that appellant be escorted into the courtroom in an unobtrusive manner or be seated at a table that blocked the jury's view of his shackles. We may therefore infer that the jurors' exposure to the restraints was de minimus. Finally, there is no evidence that the restraints inhibited appellant from taking the stand in this case in which there was strong evidence of guilt. (See *People v. Tuilaepa, supra,* 4 Cal.4th at p. 584.) Under all the circumstances we conclude appellant, under any standard, was not prejudiced by the use of restraints.

Exh. 6 at 8-10.

In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that "the Constitution forbids the use of visible shackles during [trial], *unless* that use is 'justified by an essential state interest' — such as the interest in courtroom security — specific to the defendant on trial." *Id.* at 624, emphasis in original (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568-569 (1986)). The Supreme Court further held that improper shackling is subject to harmless error review. *Id.* at 635; *accord Larson v. Palmateer*, 2008 U.S. App. LEXIS at *10-11 (shackling defendant with visible leg brace without sufficient justification violated due process, but was harmless under *Brecht*). Also, "a jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom does not warrant habeas relief unless the petitioner makes an affirmative showing of prejudice." *Williams v. Woodford*, 306 F.3d 665, 691 (9th Cir. 2002).

Here, the trial court conducted a full-blown hearing before concluding that the use of shackles was justified in this case. The state appellate court held that the inquiry "allowed the court to reach its own determination of a manifest need to impose restraints for the security of courtroom personnel, based on the nature and seriousness of appellant's past combative conduct toward law enforcement officials." Exh. 6 at 9. The conclusion that the inquiry was sufficient was clearly

1   reasonable. *See Wilson v. McCarthy*, 770 F.2d 1482, 1485 (9th Cir. 1985) (finding no error where

2   the judge "held a hearing and stated for the record his reasons for requiring Powell to remain

3   shackled"); *cf. Deck v. Missouri*, 544 U.S. at 634 (finding error where judge required defendant to

4   wear shackles at penalty phase based solely on the fact that he had been convicted at guilt phase).

5          In addition, the use of shackles was justified by the particularized need for courtroom

6   security in this case.  The evidence showed that petitioner had sustained numerous rules violations

7   while incarcerated, including battery, willful delay, refusing orders, threats of force or violence,

8   gassing, destruction of state property, arson, possession of inmate-manufactured alcohol, and

9   possession of contraband.  The current charges were for offenses against correctional officers.

10  Accordingly, the state appellate court reasonably concluded that there was a "factual basis from

11  which [the trial court] could reasonably infer that appellant posed a potential threat of disruption to

12  any figure of actual or perceived authority in the criminal judicial system, e.g., judge, attorneys,

13  jurors, bailiffs, court reporters."  Exh. 6 at 9.  No due process violation resulted.

14         Even if it did, any error was harmless.  Petitioner has not offered any evidence that the

15  jurors ever saw the shackles.  Even if they had a brief glimpse of the restraints, they did not convict

16  petitioner on Count I, demonstrating that the sight did not undermine the presumption of innocence.

17  *See Deck v. Missouri*, 544 U.S. at 630.  Further, the evidence of petitioner's guilt on Count II was

18  very strong, and the jury was instructed that it could not consider the fact that petitioner was wearing

19  shackles for any purpose.  For all these reasons, there was no substantial and injurious effect on the

20  verdict.  *Brecht*, 507 U.S. at 637.

21

22                                          **III.**

23                  **NO UNANIMITY INSTRUCTION WAS REQUIRED**

24         Petitioner contends that the trial court was required sua sponte to give a unanimity

25  instruction on Count II, and that the absence of such instruction violated state law, lowered the

26  prosecution's burden of proof, and denied him the right to a unanimous verdict by at least six jurors.

27

28

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

1    Petition at 7-8.[5/]

2            The California Court of Appeal rejected this claim as follows.

3        We find no error in the lack of a unanimity instruction.  First, the charging document
         specifically alleged that appellant "resist[ed] Sergeant Bosley and Officers Holt, and Hall
4        in the performance of his duty."  The evidence was undisputed that these three officers
         were not involved in escorting appellant to the shower; they did not come on the scene
5        until they were summoned to return him from the shower to his cell.  Thus any act
         preceding their appearance could not have been the basis of the jury's verdict.
6
         Second, in his closing argument, the prosecutor elected the act that constituted the offense
7        when he stated, "Count 2 happened in this place, the shower."  In so doing, he omitted
         acts that did not occur in the shower as a basis of count two.  While the prosecutor
8        referred in his argument to other acts by appellant during the entire course of what we
         have called, for convenience, the shower incident, his references were in the context of
9        demonstrating appellant's mental state at the time of the act in the shower.  Fairly read,
         his argument was that these other acts were evidence from which the jury could
10       reasonably infer that, when appellant resisted the officers in the shower, he was of a mind
         to do so "knowingly," as required by section 69, and that his resistance was not
11       inadvertent or accidental.

12       Finally, we observe that appellant's own closing argument militates against any question
         that the jury was uncertain of the act that constituted the count two offense. As defense
13       counsel argued, "[A]s far as Count 2 goes . . . He's taken to the shower where all of . . .
         this incident happens."  Thus, appellant acknowledged that the act selected by the People
14       as the count two offense was the act in the shower, not the acts before or after.

15   Exh. 6 at 13.

16
             In *Schad v. Arizona*, 501 U.S. 624 (1991), the Supreme Court held that the U.S.
17
     Constitution does not require unanimity on a theory of guilt.  *Id.* at 630; *Richardson v. United States*,
18
     526 U.S. 813, 821 (1999) ("this Court has not held that the Constitution imposes a jury unanimity
19
     requirement"); *Evanchyk v. Stewart*, 340 F.3d 933, 937 n. 1 (9th Cir. 2003) ("Submitting a multi-
20
     theory crime to the jury without requiring unanimity on any one predicate theory is not a
21
     constitutional violation.").  In the absence of Supreme Court authority clearly establishing the rule
22
     on which he relies, petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d).  *See Carey*
23
     *v. Musladin*, 127 S.Ct. 649, 654 (2006).
24
             In addition, an alleged violation of state law is not cognizable on federal habeas corpus
25
     review.  *Estelle v. McGuire*, 502 U.S. at 67.  In any event, the California Court of Appeal found that
26
     state law did not require a unanimity instruction in this case, because the charging document, the
27

28           5.  Defense counsel did not request a unanimity instruction.  *See* CT 176-179.

     *Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA
                                              11

prosecutor, and defense counsel all made clear which act constituted the basis for the crime. That interpretation of California law is binding on this court. *See id.* Petitioner also relies on *Burch v. Louisiana*, 441 U.S. 130 (1979), and *Brown v. Louisiana*, 447 U.S. 323 (1980). However, those cases establish only that a defendant who is tried by a six-person jury cannot be convicted by less than six votes as a constitutional minimum, which did not occur here.

Even if constitutional error occurred, no prejudice resulted. Petitioner contends prejudice is measured under the test set forth in *Chapman v. California*, 386 U.S. 18 (1967). Petition at 8. However, the *Brecht* standard applies to all cases on federal habeas corpus review. *See Fry v. Pliler*, 127 S.Ct. 2321. Any error was harmless under *Brecht* because it was clear that, although the prosecutor discussed the various "stages" of the offense, the factual basis for the crime was petitioner's resistance to Sergeant Bosley and Officers Holt and Hall as he was leaving the shower. The lack of a unanimity instruction did not have a substantial and injurious effect on the verdict.

## IV.

## THE GUILTY VERDICT WAS NOT BASED ON UNCHARGED ACTS

Petitioner contends the guilty verdict on Count II may have been based on uncharged acts in violation of due process. Petition at 8-9. Petitioner cites the following instruction, which is based on the language of Cal. Penal Code § 69:

> Every person who willfully attempts by means of any threat or violence to deter or prevent an executive officer from performing any duty imposed upon that officer by law or who resists by force or violence an executive officer in the performance of his or her duty is guilty of a violation of section 69 of the Penal Code, a crime.

CT 636. This portion of the instruction states two different ways that the offense can be committed. Petitioner argues that there was evidence presented at trial that he committed acts that could constitute deterrence or prevention of duties by threats or violence, but that he was charged in the information only with resistance by force or violence.

The California Court of Appeal found no due process violation, stating:

"Due process requires that an accused be advised of the specific charges against him so

1   he may adequately prepare his defense and not be taken by surprise by evidence offered
    at trial. [Citations.]"   (*People v. Haskin* (1992) 4 Cal.App.4th 1434, 1438.) Thus, in
2   isolation, the court's reading the whole of section 69 could be deemed erroneous because
    it suggested appellant could be convicted of a charge of which he had not been accused.
3   However, a challenge to the language of an instruction is resolved by determining whether
    there is a reasonable likelihood that the jury misapplied or misconstrued the instruction.
4   (*People v. Crew* (2003) 31 Cal.4th 822, 848.) In making this determination, the reviewing
    court considers not only the specific language of the challenged instruction but also the
5   instructions as a whole. (*People v. Cain* (1995) 10 Cal.4th 1, 36.)

6   It is not reasonably likely that the challenged instruction was misapplied or misconstrued
    in this case.  At the outset of trial the court instructed the jury that appellant was charged,
7   in violation of section 69, with "resist[ing]" the officers "by use of force and violence."
    After all the evidence was presented, the court instructed that in order to prove a violation
8   of section 69, "as charged" in count two, "each of the following elements must be proved:
    One, a person knowingly resisted an executive officer in the performance of his or her
9   duty; and Two, the resistance was accompanied by means of force or violence."  This
    instruction did not include either "threats" or "deterrence" or "prevention" as elements of
10  the charged offense.

11  The court also instructed that "Every person who willfully delays or obstructs any
    correctional peace officer in the discharge or attempt to discharge any duty of his office
12  or employment . . . is guilty of a violation of [] section 148 subdivision (a)(1), a
    misdemeanor, a lesser offense to that charged in Count 2 of the information. . . . If you are
13  not satisfied beyond a reasonable doubt that defendant is guilty of the crime charged in
    Count 2, resisting an executive officer, you may [nevertheless] convict him of any lesser
14  crime if you are convinced beyond a reasonable doubt he is guilty of the lesser crime." The
    prosecutor's closing argument emphasized that count two involved "resisting" an officer
15  by "force or violence," and argued there was evidence of "sufficient force" in appellant's
    "resistance" of the officers.  He explained that the difference between felony "resisting"
16  an officer and misdemeanor "resisting" an officer was the element of "force and
    violence."  The prosecutor did not argue for conviction of section 69 based on a theory
17  or evidence of threats, deterrence, or prevention.

18  In explaining the verdict forms after the parties completed their closing arguments, the
    court instructed that, as to count two, there were three choices.  "You could find the
19  defendant guilty of the crime of resisting an executive officer by force and violence.  You
    could find him guilty of the [lesser] count of resisting or delaying a correctional officer.
20  Or you could find him not guilty.  Again, you place an x or check on one of the three lines
    that you find. . . ."  The jury placed an x alongside "Guilty of Resisting Executive Officer,
21  in violation of Penal Code Section 69."

22  In light of these instructions, the prosecutor's closing argument, and the jury's specific
    verdict, it is not reasonable that the challenged instruction misled the jury to believe it
23  could find appellant guilty of violating section 69 based on the first type of conduct
    specified under the statute.  Rather, it was fully apprised that in order to find him guilty,
24  it had to find the elements of the offense charged: the second type of offense under the statute.

25  Exh. 6 at 14-16.

26      A criminal defendant has a "right to notice of the charges against which he must defend."

27  *Gray v. Netherland*, 518 U.S. 152, 168 (1996); *Cole v. Arkansas*, 333 U.S. 196 (1948).  Petitioner

28  contends the instruction may have been misleading about the particular charge that comprised the

    *Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

                                            13

1  crime, but a claim of state instructional error can be the basis of federal habeas relief only if there

2  is a "reasonable likelihood" the jury misapplied the instructions. *Estelle v. McGuire,* 502 U.S. at

3  72.[6/]  The federal habeas court must defer to a state court's reasonable application of this test. *Brown*

4  *v. Payton*, 544 U.S. 133, 140 (2005).

5          The state appellate court's conclusion that the jury was not misled about the charges was

6  reasonable.  Petitioner focuses only on that part of the instruction that tracked the language of the

7  statute, but "a single instruction to a jury may not be judged in artificial isolation, but must be

8  viewed in the context of the overall charge." *Cupp v. Naughton*, 414 U.S. 141, 146-147 (1973); *see*

9  *Middleton v. McNeil*, 541 U.S. 433 (2004) (per curiam) (no reasonable likelihood that jury was

10 misled by admittedly erroneous instruction where other instructions stated correct test).  Here, the

11 jury was informed at the outset of trial that petitioner was charged with "resist[ing]" the officers "by

12 use of force and violence."  RT 11/8/2004 12-13.  The court instructed the jury after the close of

13 evidence that "[i]n order to prove this crime each of the following elements must be proved:  One,

14 a person knowingly resisted an executive officer in the performance of his or her duty; and Two, the

15 resistance was accompanied by means of force or violence."  CT 636; RT 11/8/2004 151-152.  The

16 court also explained that the jury had three options regarding Count II:  "You could find the

17 defendant guilty of the crime of resisting an executive officer by force and violence.  You could find

18 him guilty of the lessor count of resisting or delaying a correctional officer.  Or you could find him

19 not guilty." RT 11/8/2004 172.  Because these instructions made it clear that the only acts that could

20 support a guilty verdict on Count II were resisting an executive officer by force or violence, there

21 was no reasonable likelihood the jury based the verdict on the uncharged theory of deterrence or

22 prevention of duties by threats or violence.

23         In addition, the prosecutor relied only on the resistance by force or violence theory in

24 closing argument.  The prosecutor argued that a conviction on Count II would require that petitioner

25

26 ───────────────

27     6.  Petitioner argues only that it is "possible, if not likely," that the jury misapplied the instruction. Petition at 9.  However, the "reasonable likelihood" standard requires him to show more than a mere "possibility" of misunderstanding. *Weeks v. Angelone*, 528 U.S. 225, 236 (2000).  For

28 this reason alone, he has failed to meet his burden to show that constitutional error occurred.

"knowingly . . . resisted an executive officer in the performance of his duty.  And it was done by means of force or violence. . . . You'll have to decide, is that sufficient force the way he resisted for 25 to 45 minutes — whatever you decide it was.  Does that suffice to satisfy that resisting an executive officer?"  RT 11/8/2004 163-164.  The prosecutor also argued that there was sufficient force or violence to support the felony charge, as opposed to the misdemeanor lesser included offense of delaying or obstructing an officer.  RT 11/8/2004 164.  The prosecutor never suggested that a conviction could be based on the theory of deterrence or prevention of duties by threats or violence.  The arguments of counsel may clarify an ambiguous or internally inconsistent jury charge, particularly "when it is the *prosecutor's* argument that resolves an ambiguity in favor of the *defendant*."  *Middleton v. McNeil*, 541 U.S. at 438, emphasis in original.  Accordingly, the state appellate court's conclusion that the jury was not misled was reasonable.

Even if error occurred, it was harmless under *Brecht*.  *See Calderon v. Coleman,* 525 U.S. 141, 147 (1998) (per curiam).  For all the reasons discussed above, the single ambiguous instruction had no substantial and injurious effect on the verdict.

# V.

## NO CUMULATIVE ERROR OR PREJUDICE OCCURRED

Petitioner contends the cumulative effect of the constitutional errors alleged in Claims I through IV violated due process.  Petition at 9.

Petitioner raised this argument in the state appellate and supreme courts.  The appellate court did not expressly address it, and the supreme court summarily denied review.  Where there is no reasoned opinion by the state court, the federal habeas court does not conduct a de novo review; it does "perform an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable."  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

The Ninth Circuit has held that "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  In *Parle* the errors included the admission of evidence from Parle's psychiatrist in violation of the constitutional right to privacy, the exclusion of evidence from

an expert witness about Parle's mental state, the exclusion of evidence of the victim's previous threats and character for violence, and the admission of character evidence in the form of Parle's previous threats against a police officer. The Ninth Circuit found that the cumulative effect of these errors rendered the trial unfair, and had a substantial and injurious effect on the verdict. *Id*. at 934.

By contrast, in this case no error occurred.[7] Thus, there was no error to accumulate into a due process violation. Habeas relief is unwarranted.

---

7. Respondent did acknowledge in the state appellate court that the instruction tracking Cal. Penal Code § 69 should not have been given, but argued that no state or federal constitutional error resulted, and the California Court of Appeal agreed.

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

1

**CONCLUSION**

2   Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3 be denied.

4

5   Dated:  March 20, 2008

6        Respectfully submitted,

7        EDMUND G. BROWN JR.
          Attorney General of the State of California

8        DANE R. GILLETTE
          Chief Assistant Attorney General

9

10       GERALD A. ENGLER
          Senior Assistant Attorney General

11       JULIET B. HALEY
          Deputy Attorney General

12       **/s/ Peggy S. Ruffra**

13

14       PEGGY S. RUFFRA
          Supervising Deputy Attorney General

15       Attorneys for Respondent

16

17

18

19

20

21

22

23

24

25

26

27

28

*Brown v. Horel* - Mem. of Points and Authorities in Support of Answer - C 08-00853 WHA

1

**TABLE OF CONTENTS**

2

**Page**

3    STATEMENT OF THE CASE                                                      1

4    STATEMENT OF FACTS                                                         2

5    STANDARD OF REVIEW                                                         3

6    ARGUMENT                                                                   4

7       I.    **JOINDER OF COUNTS ONE AND TWO DID NOT VIOLATE
              DUE PROCESS**                                                     4
8
        II.   **PETITIONER WAS NOT IMPROPERLY SHACKLED**                        6
9
        III.  **NO UNANIMITY INSTRUCTION WAS REQUIRED**                        10
10
        IV.   **THE GUILTY VERDICT WAS NOT BASED ON UNCHARGED
              ACTS**                                                           12
11

12      V.    **NO CUMULATIVE ERROR OR PREJUDICE OCCURRED**                    15

13   CONCLUSION                                                                17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2                                                                                    **Page**

3   **Cases**

4   *Bean v. Calderon*
    163 F.3d 1073 (9th Cir. 1998)                                                        6
5
    *Brecht v. Abrahamson*
6   507 U.S. 619 (1993)                                                      6, 9, 10, 12, 15

7   *Brown v. Louisiana*
    447 U.S. 323 (1980)                                                                 12
8
    *Brown v. Payton*
9   544 U.S. 133 (2005)                                                                 14

10  *Burch v. Louisiana*
    441 U.S. 130 (1979)                                                                 12
11
    *Calderon v. Coleman*
12  525 U.S. 141 (1998)                                                                 15

13  *Carey v. Musladin*
    127 S.Ct. 649 (2006)                                                                11
14
    *Chapman v. California*
15  386 U.S. 18 (1967)                                                                  12

16  *Cole v. Arkansas*
    333 U.S. 196 (1948)                                                                 14
17
    *Cupp  v. Naughton*
18  414 U.S. 141 (1973)                                                                 14

19  *Davis v. Woodford*
    333 F.3d 982 (9th Cir. 2003)                                                         5
20
    *Deck v. Missouri*
21  544 U.S. 622 (2005)                                                               9, 10

22  *Estelle v. McGuire*
    502 U.S.62 (1991)                                                             5, 12, 14
23
    *Evanchyk v. Stewart*
24  340 F.3d 933 (9th Cir. 2003)                                                        11

25  *Fry v. Pliler*
    127 S.Ct. 2321 (2007)                                                             6, 12
26
    *Gray v. Netherland*
27  518 U.S. 152 (1996)                                                                 14

28

**TABLE OF AUTHORITIES** (continued)

Page

*Hernandez v. Small*
282 F.3d 1132 (9th Cir. 2002)                                                          2

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003)                                                          16

*Holbrook v. Flynn*
475 U.S. 560 (1986)                                                                    9

*Larson v. Palmateer*
__ F.3d __, 2008 U.S. App. LEXIS 3097 (9th Cir. Feb. 13, 2008)                     5, 9

*Lockyer v. Andrade*
538 U.S. 63 (2003)                                                                     3

*Mendez v. Small*
298 F.3d 1154 (9th Cir. 2002)                                                          5

*Middleton v. McNeil*
541 U.S. 433 (2004)                                                                14, 15

*Park v. California*
202 F.3d 1146 (9th Cir. 2000)                                                          6

*Parle v. Runnels*
505 F.3d 922 (9th Cir. 2007)                                                          16

*Peyton v. Rowe*
391 U.S. 54 (1968)                                                                     2

*Richardson v. United States*
526 U.S. 813 (1999)                                                                   11

*Schad v. Arizona*
501 U.S. 624 (1991)                                                                   11

*Schriro v. Landrigan*
127 S.Ct. 1933 (2007)                                                                  3

*United States v. Lane*
474 U.S. 328 (1986)                                                                    5

*United States v. Unruh*
855 F.2d 1363 (9th Cir. 1987)                                                          6

*Weeks v. Angelone*
528 U.S. 225 (2000)                                                                   14

*Williams v. Woodford*
306 F.3d 665 (9th Cir. 2002)                                                           9

**TABLE OF AUTHORITIES**  (continued)

Page

*Wilson v. McCarthy*
770 F.2d 1482 (9th Cir. 1985)                                    10

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                               3


**Constitutional Provisions**

United States Constitution
        Fifth Amendment                                          5

**Statutes**

California Penal Code
        § 4501.5                                                 1
        § 69                                                     1, 12

California Evidence Code
        § 1101(b)                                                4

United States Code
    Title 28
        § 2254(d)                                                6, 11
        § 2254(d)(1)                                             3
        § 2254(e)(1)                                             2


**Other Authorities**

California Jury Instructions - Criminal
        No. 1.04                                                 7

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
6  State Bar No. 117315
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-1362
8    Fax: (415) 703-1234
     Email: peggy.ruffra@doj.ca.gov
9  Attorneys for Respondent

10                  IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13
     **TRAVELL BROWN,**                          C 08-853 WHA
14
                                  Petitioner,    **NOTICE OF LODGING OF**
15                                               **EXHIBITS**
                 **v.**
16
     **ROBERT HOREL, Warden,**
17
                                 Respondent.
18

19         Notice is hereby given that the following exhibits are lodged in support of respondent's

20  answer and memorandum of points and authorities:

21         EXHIBIT 1      Clerk's Transcript (3 volumes)

22         EXHIBIT 2      Reporter's Transcript (18 volumes)

23         EXHIBIT 3      Appellant's Opening Brief

24         EXHIBIT 4      Respondent's Brief

25         EXHIBIT 5      Appellant's Reply Brief

26         EXHIBIT 6      Opinion by California Court of Appeal

27         EXHIBIT 7      Petition for Review

28         EXHIBIT 8      Order denying review by California Supreme Court

1

2          Dated:  March 20, 2008

3                              Respectfully submitted,

4                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

5                              DANE R. GILLETTE
                               Chief Assistant Attorney General
6
                               GERALD A. ENGLER
7                              Senior Assistant Attorney General

8                              JULIET B. HALEY
                               Deputy Attorney General
9
                               **/s/ Peggy S. Ruffra**
10
                               PEGGY S. RUFFRA
11                             Supervising Deputy Attorney General

12                             Attorneys for Respondent

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28