Michael S. Romano
Attorney at Law
State Bar No. 232182
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Attorney for Petitioner Travell Brown

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Travell Brown, | ) Case No.  08-00853 WHA |
| Petitioner, | ) |
| | ) |
| vs. | ) **PETITIONER'S TRAVERSE** |
| | ) |
| Robert Horel, Warden, | ) |
| Respondent. | ) |

## <u>INTRODUCTION</u>

Petitioner Travell Brown was a prisoner at Pelican Bay State Prison serving time on an unrelated non-violent drug offense when he was charged with the in-prison offenses in this case. The charges were not particularly serious—count one alleged that Petitioner spat at a prison guard from a holding cell and count two alleged that several days later he resisted prison guards, by shrugging his shoulders, when he refused to walk backwards out of a shower.  No one was injured in either incident except maybe Petitioner, who was taken to the prison infirmary after he was tackled by four guards following the shower incident.  It's surprising that these charges were even filed in Superior Court rather than adjudicated within the prison administrative processes.

Although this background is not directly relevant to the instant Petition, it helps explain why the trial court erred so badly.  It was assumed from the outset that Petitioner was a bad prisoner and a troublemaker.  The case was small and routine, and nobody gave it much thought.

PETITIONER'S TRAVERSE                    - 1 -

Once on trial, however, Petitioner was entitled to the full panoply of constitutional protections. This Court stands to ensure those protections and provide the thorough and impartial review that Petitioner deserves but has never received.

The prejudices against Petitioner gave rise to two important violations of his federal constitutional rights. First, the trial court decided to try the two unrelated counts together in a single trial, despite the fact that the prosecutor agreed to try them separately and conceded that there was no relevant evidence common to both charges. As discussed below, clearly established Supreme Court law provides that the Due Process Clause protects a criminal defendant from having to defend himself on two unrelated fronts in a single trial. Second, the trial court ordered that Petitioner be shackled during his trial. Clearly established Supreme Court law prohibits the shackling of a criminal defendant absent a reasonable showing of a compelling state interest, requiring that the defendant be restrained. Here, the state court ruled that it could "infer" that Petitioner posed a risk to courtroom security at a hearing conducted over a year prior to his trial. The state court's ruling is contrary to Supreme Court precedent and unreasonable on its face.[1]

This is not a major case. Petitioner was not charged with a violent offense. No one was hurt. At most, the incident charged against Petitioner amounted to a scuffle behind prison walls. According to the most conservative reading of the evidence offered by the Prosecution, after a

_____

[1] Petitioner raises two additional violations of his constitutional rights: The trial court failed to instruct the jury that it must unanimously agree to the offense committed by Petitioner—not a trivial task given the prosecution's "three stage" theory of the case. (*See* Petition at paragraph X.) And the trial court improperly instructed the jury on the elements of the offense, permitting the jury to convict on allegations that were not contained in the charging documents. (*See* Petition at paragraph XI.) Petitioner does not provide additional briefing on these claims in this Traverse. However, these errors certainly contributed to the trial court's overall failure to provide Petitioner with a fair and impartial trial. *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) ("The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal.")

1  brief and initial resistance to prison protocol, Petitioner was tackled and fully restrained by at

2  least four prison guards.  For his infraction, Petitioner was sentenced to an additional three years

3  in prison.  Yet the case raises major constitutional concerns, including issues of fair play.

4  Prejudices and presumptions of guilt in Petitioner's trial ran roughshod over clearly established

5  constitutional law.  A fair reading of the law and record below will show that Petitioner was

6  denied a fair trial and is entitled to habeas relief.

7

8

9                                   **ARGUMENT**

10 **I.    JOINDER OF COUNTS ONE AND TWO VIOLATED PETITIONER'S RIGHT
11         TO A FAIR TRIAL AND DUE PROCESS OF LAW**

12        **A.    Clearly Established Law**

13        Respondent correctly recites the controlling clearly established Supreme Court law

14 concerning a single trial on unrelated criminal charges.  (Respondent's Memo at 5.)  A single

15 trial on two or more criminal charges violates due process if the joinder "results in prejudice so

16 great as to deny a defendant his Fifth Amendment right to a fair trial."  *United States v. Lane*,

17 474 U.S. 328, 336, n.8 (1986).  Respondent also correctly identifies the two main criteria for

18 evaluating undue prejudice on federal habeas review in this Circuit: (1) whether evidence

19 admitted at trial was "cross-admissible" among the joined counts; and (2) whether there was

20 "danger of 'spillover' from one charge to another, especially where one charge or set of charges

21 is weaker than another."  (Respondent's Memo at 5 (quoting *Davis v. Woodford*, 333 F.3d 982,

22 991 (9th Cir 2003.).)

23        However, Respondent incorrectly conflates the analysis.  The issues of "cross-

24 admissibility" and "spillover" concern distinct scenarios that require independent evaluation.

25 Ninth Circuit law is clear that unfair prejudice, worthy of habeas relief, may result from *either*

improper admission of irrelevant (not cross-admissible) evidence *or* improper spillover of

evidence from one count to the other:

> We have recognized that the risk of undue prejudice is particularly
> great whenever joinder of counts allows evidence of other crimes
> to be introduced in a trial where the evidence would otherwise be
> inadmissible. Undue prejudice *may also* arise from the joinder of a
> strong evidentiary case with a weaker one. The reason there is
> danger in *both situations* is that it is difficult for a jury to
> compartmentalize the damaging information.

*Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000) (citations omitted) (emphasis added).

In other words, this Court may grant habeas relief if the California Court of Appeal unreasonably

determined that there was no undue prejudice because evidence in counts one and two was cross-

admissible *or* if the California Court of Appeal unreasonably ruled that there was no improper

bolstering of counts through the spillover evidence. *Ibid*.

　　　　In fact, the state court unreasonably erred on both scores.

　　**B.　　Cross-Admissibility**

　　　　The state court of appeal ruled that there was no due process violation in joining counts

one and two at Petitioner's trial, in part, because the evidence in the two counts was cross-

admissible. (Petitioner's Excerpt of State Court Record ("ER"), Tab E, *People v. Brown*,

California State Court of Appeal Decision, no. A108735, at 4-5.) This decision is unreasonable

because it is contradicted the plain record—including prosecution's own concession at trial that

the evidence was *not* cross-admissible. (ER Tab C, Oct. 9 Transcript at 4.) During the pretrial

hearing on Petitioner's severance motion, the district attorney acknowledged that the evidence

offered by the prosecution on each count was independent, not relevant to the other count, and

that there was no probative value in trying the counts together: "I can't honestly tell you [that

the two counts] the same fact pattern [or] the same witnesses. . . . I do not have interlocking witness testimony." (*Ibid*.)

Respondent does not address the prosecution's concession but acknowledges that Petitioner's severance motion was unopposed by the prosecution. (Respondent's Memo at 4.) *See Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir. 1998) (finding due process error when "[t]he State virtually concedes the absence of cross-admissibility, the lack of common modus operandi, and the possible prejudicial effect of joinder. [I]f we were to adopt the State's theory, joinder would never be improper.")[2]

The state court's decision ignoring the prosecutor's concession was unreasonable. The state court of appeal substituted its own judgment on the theory of the case and relevance of evidence over the judgment of the very prosecutor who tried the case. The state court ruled *post hoc* that the evidence offered in both counts was cross-admissible on the theory that evidence in each count established a common plan under California Evidence Code 1101. (ER Tab E, COA Decision at 6.)

Petitioner does not (because he cannot) contest the state court's interpretation of the state code of evidence.[3] However, a state court may not inoculate itself from federal habeas review

---

[2] Respondent argues that *Bean* is distinguishable on the grounds that it is a capital case. (Respondent's Memo at 6.) Yet *Bean* is repeatedly cited as authority on the question of improper joinder in *Davis v. Woodford*, 333 F.3d 982 (9th Cir. 2003), which is a non-capital case quoted extensively by Respondent. (Respondent's Memo at 5.) No court has ever suggested that capital cases require stricter scrutiny of improper joinder under the Due Process Clause.

[3] Petitioner hardly concedes that the court of appeals was correct in holding that Evidence Code section 1101 applies here. The prosecutor argued in his closing statement that the two counts involved a common *modus operandi* because Appellant used the same profanity in both incidents. (ER Tab D, Nov. 8 Transcript at 170.) Use of a profanity cannot establish a criminal "signature." *See People v. Bean*, 46 Cal. 3d 919, 937 (1988) ("To be admissible as *modus operandi* evidence there must be common marks which, considered singly or in combination, support the strong inference that defendant committed both crimes. These common marks must

1   error merely by resting decisions in state law.  *See Davis v. Woodford*, 446 F.3d 957, 962 (9th

2   Cir. 2006) (finding that a state court unreasonably applied Supreme Court due process precedent,

3   and granting habeas relief, when the due process violation occurred because the state court failed

4   to follow state law governing plea agreements); *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir.

5   2006) (noting that "every circuit" has held that evidence admitted under a proper understanding

6   of state law may nonetheless violate federal due process) (citing cases).   Here, the record is clear

7   that the evidence in question was not offered by the prosecution for the purpose postulated by the

8   state court of appeal.  The state court's *post hoc* rationale for the joinder of counts one and two

9   was contrary to the prosecutor's stated theory of the case and is an unreasonable ruling on the

10  facts of this case.  A state court's "post-hoc" and "after-the-fact justifications" cannot cure trial

11  court errors on federal habeas review.  *Larson v. Palmateer*, 515 F.3d 1057, 1063 (9th Cir.

12  2008)).  Joinder should never be permitted where the crimes charged are of such a nature that the

13  jury might regard one as corroborative of the other, when, in fact, no corroboration exists.  *See

14  Drew v. United States* (D.C. Cir. 1964) 331 F.2d 85; *United States v. Foutz* (4th Cir. 1976) 540

15  F.2d 733, 736-739; *United States v. Ragghianti*, 527 F.2d 586.

16          Because the state court of appeal unreasonably determined that evidence in counts one

17  and two was cross-admissible, petitioner is entitled to relief on this error alone.  *Sandoval*, 241

18  F.3d at 772 ("[U]ndue prejudice is particularly great whenever joinder of counts allows evidence

19  of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible.")

20  The error was exacerbated by the state court's "spillover" analysis.

27  be distinctive rather than ordinary aspects of any such category of crime.  They must be
    sufficiently distinctive that they bear defendant's unique 'signature.'") (citations and quotation
28  marks omitted).
    .

## C. Spillover

The state court also unreasonably concluded that there was no likelihood of "spillover" of evidence between the two joined counts.[4]  The state court ruled that:

> [W]hen the severance motion was made . . . the preliminary hearing testimony [and allegations] . . . [did not] imply that one charge was disproportionately weaker or stronger than the other, such that one was being joined with another to produce a spillover effect that unfairly strengthened the weak case.

(ER Tab E, Decision at 6.)  This ruling is directly contrary to the unambiguous record created by the Superior Court at Petitioner's preliminary hearing.  At this hearing, the Superior Court stated that while probable cause certainly supported count one, "[i]t's a much closer case as to whether the crime was committed [as alleged in count two]."  (Respondent's Exhibit 2, May 22 Preliminary Hearing Transcript at 26.)  In other words, the very court that conducted the preliminary hearing stated on the record that one count was stronger than the other.  Subsequently, at trial, the jury hung on one of the two counts.  A court record is rarely so clear that evidence supporting one count was weaker than another.[5]  The state court of appeal's decision to the contrary and subsequent conclusion that there was no spillover between the counts resulting in a compromise guilty verdict is not a reasonable ruling given the record in this

---

[4] As discussed above, spillover of evidence between two unrelated charges can result in a constitutional violation even if the evidence was technically cross-admissible.  *Sandoval*, 241 F.3d at 772.

[5]  The fact that a jury did not convict on the different counts sought to be severed is not relevant.  *See People v. Smallwood* (1986) 2 Cal. 3d 415, 433 (It is "equally [possible] . . . that the verdict represented a compromise resulting from the spillover effect of considering the two unrelated groups of charges.")  This is particularly true because the trial court never instructed the jury to consider evidence in the two counts independently.  *Cf. Featherstone v. Estelle*, 948 F.2d 1497, 1504 (9th Cir. 1991) ("[I]t is apparent from the jury's discerning verdict that it followed the court's instructions to regard each count as separate and distinct.")

1   case.  *See Davis*, 333 F.3d at 991 (holding that spillover of irrelevant evidence from one count to

2   another is "especially [problematic] where one charge or set of charges is weaker than another.")

3        The state court of appeal erred further by limiting its "spillover" analysis to evidence

4   adduced at Petitioner's preliminary hearing and the allegations in the complaint.  The due

5   process violation occurred, if at all, during Petitioner's trial.

6        At trial, the prosecutor used his closing statement to encourage the very spillover of

7   evidence prohibited by the Due Process Clause.  After agreeing prior to trial that the evidence in

8   count one was irrelevant to count two, (ER Tab C, Oct. 9 Transcript at 4), the prosecutor argued

9   in his closing statement that the two counts corroborated each other because that involved a

10  common *modus operandi—i.e.* Petitioner used the same profanity in both incidents, (ER Tab D,

11  Nov. 8 Transcript at 170).  The prosecutor also argued that Petitioner engaged in illegal

12  resistance charged in count two because he remained irritated from the incident alleged in count

13  one.  (*Ibid*.)  Yet there was absolutely no evidence produced at trial that the incidents charged in

14  counts one and two, which occurred several days apart, had any connection or that the witnesses

15  who were the purported victims in count two where in any way aware of the incident charged in

16  count one.  *See Sandoval*, 241 F.3d 765, 772 (holding that "it is difficult for a jury to

17  compartmentalize the damaging information [contained in separate counts].")

18       The Ninth Circuit has held that, as here, a jury cannot "reasonably [be] expected to

19  compartmentalize the evidence so that evidence of one crime [did] not taint the jury's

20  consideration of another crime when the State's closing argument and the import of several of

21  the instructions it heard urged it to do just the opposite."  *Bean*, 163 F.3d at 1084.

22       The state court of appeal chose to ignore the prejudicial effect of the prosecutor's closing

23  argument by cabining its decision to the time "when the severance motion was made" and

considering only the preliminary hearing testimony and allegations in the complaint. (ER Tab E, COA Decision at 6.) This makes some sense in reviewing the trial court's decision to deny Petitioner's severance motion under state law for abuse of discretion but is clearly error in evaluating Petitioner's federal due process claim. The violation of Petitioner's due process rights occurred when the jury used evidence presented in count one to convict on count two. The state court's failure to recognize this basic legal principle, and consequent failure to consider the prosecutor's improper spillover argument on *modus operandi*, further demonstrates the state court's error.

### D.    Prejudice

When joinder of charges permits the jury to hear of other irrelevant criminal allegations from other counts, "there is a high risk of undue prejudice." *Lewis*, 787 F.2d at 1322; *Bruton v. United States* (1968) 391 U.S. 123, 126 ("The Government should not have the windfall of having the jury be influenced by evidence against a defendant which . . . they cannot put out of their minds.") By the prosecutor's own concession at Petitioner's severance hearing, evidence offered in each count was not relevant to the other. (ER Tab C, Oct. 9 Transcript at 4.)

Furthermore, the Ninth Circuit has held that concerns underlying due process "resonate with particular force" when, as here:

> not only did the trial court join counts for which the evidence was not cross-admissible, but the State repeatedly encouraged the jury to consider the two sets of charges in concert, as reflecting the modus operandi characteristic of [the defendant's] criminal activities. Thus, the jury could not reasonably [have been] expected to compartmentalize the evidence so that evidence of one crime [did] not taint the jury's consideration of another crime when the State's closing argument and the import of several of the instructions it heard urged it to do just the opposite.

*Bean*, 163 F.3d at 1084 (citations and quotation marks omitted).

Here, it is more than reasonably possible that the allegations in count one influenced the jury's verdict in count two. The prosecutor encouraged the jury to make *this very inference* when he argued that both incidents involved a similar *modus operandi* and that Petitioner resisted officers as charged in count two *because* he remained irritated from the incident alleged in count one. (ER Tab D, Nov. 8 Transcript at 170.) Furthermore, the trial never corrected this error with an instruction that evidence in the separate counts must be considered independently. *Cf. Lewis*, 787 F.2d at 1323 (finding prejudicial misjoinder even with a corrective instruction).

As the state trial court acknowledged at the very outset of Petitioner's prosecution (at the conclusion of the preliminary hearing) the case against Petitioner on count two was not very strong—it was a "close[] case" if a crime was even committed. (May 22 Preliminary Hearing Transcript at 26.) Following the preliminary hearing, during a pretrial hearing on the severance issue, the prosecutor himself conceded that the counts were not cross-admissible and that no witness from count one could offer evidence as to count two, and *vise versa*. (ER Tab C, Oct. 9 Transcript at 4.) The prosecution did not oppose Petitioner's severance motion, so it is reasonable to assume that the state would not have been prejudiced by two trials. Finally, at the end of the case, the prosecutor reversed field and argued to the jury that the evidence offered in support of count one explained the conduct alleged in count two. (ER Tab D, Nov. 8 Transcript at 170.) Thus, he engaged in the very sort of unfair spillover of irrelevant evidence prohibited by the Due Process Clause. *Sandoval*, 241 F.3d at 772. The result put Petitioner at an unfair disadvantage and unjustly hampered his ability to put on an effective defense. *See Parle*, 505 F.3d at 927 (holding that question on federal habeas review is whether state court errors "renders a criminal defense far less persuasive than it might [otherwise] have been.") Petitioner's due process rights were violated because his unopposed pretrial severance motion resulted in a joint

1   trial that actually prejudiced his defense.  The state court of appeals decision to the contrary was

2   an unreasonable application of clearly established Due Process law.

3   **II.    PRISONER'S SHACKLING DURING HIS TRIAL VIOLATED DUE PROCESS**

4

5       **A.    Clearly Established Law**

6           Respondent correctly identifies the clearly established Supreme Court law controlling the

7   shackling of a defendant at trial.  (Respondent's Brief at 6.)  "[T]he Constitution forbids the use

8   of visible shackles during [trial], unless that use is justified by an essential state interest—such as

9   the interest in courtroom security—specific to the defendant on trial."  *Deck v. Missouri*, 544

10  U.S. 622, 624 (2005).)  Here, the state court's decision finding no error in the shackling of

11  Petitioner during his trial was both an unreasonable application of, and contrary to, this clearly

12  established Supreme Court law.

13

14      **B.    The State Court Unreasonably Applied Clearly Established Law**

15          The state court of appeal upheld the shackling of Petitioner during his trial based on the

16  trial court's decision that Petitioner posed a risk to courtroom security.  (ER Tab E, COA

17  Decision at 9.)  Of course, courtroom security is a compelling state interest that can justify the

18  use of shackles in a criminal trial.  *Deck*, 544 U.S. at 624.  However, the decision to shackle must

19  be reasonable.  *Larson v. Palmateer*, 515 F.3d 1057, 1063 (a trial court's shackling

20  determination must be "reasoned") (quoting *Lakin v. Stine*, 431 F.3d 959, 965 (6th Cir. 2005).

21  "[D]ue process does not permit the use of visible restraints if the trial court has not taken account

22  of the circumstances of the particular case."  *Deck*, 544 U.S. at 632.

23

24          Here, the state court's decision upholding the use of shackles was unreasonable because it

25  relied on woefully out of date information.  The hearing at which the trial court found that

26  petitioner posed a security risk took place over one year prior to Petitioner's trial.  (The hearing

27

28

was held on July 24, 2003, and Petitioner's trial began on November 8, 2004.)  And at this

hearing, zero evidence was presented that Petitioner had engaged in any violent or threatening

behavior after October 2002—over two years prior to Petitioner's trial.  The court of appeal held

that there was no recent evidence of disruptive behavior by Petitioner because he didn't have any

opportunity to be disruptive.  (ER Tab E, COA Decision at 9.)  This conclusion is simply

unreasonable.  *See Illinois v. Allen*, 397 U.S. 337, 344 (1970) (holding that "no defendant should

be tried while shackled and gagged except as a last resort.")

### 1.  The Shackling Hearing Was Conducted Over A Year Prior to Trial

Regardless of the content of the evidence presented at this hearing, it is simply not

reasonable for a court to deprive a criminal defendant of his well-established constitutional right

to be tried without shackles on the basis of a public safety exception derived from outdated

evidence.  *Deck* clearly holds that the Due Process Clause forbids the use of visible shackles

"unless" there some showing of an essential state interest, including courtroom security.  544

U.S. at 624; *Spain v. Rushen*, 883 F.2d 712, 728 (9th Cir. 1989) ("Due process requires that

shackles be imposed only as a last resort.")

Here, the showing was unreasonable because it was grossly out of date.  During the 15

months between the shackling hearing and Petitioner's trial, Petitioner could have learned to

behave; he could have undergone had a spiritual conversion; or he could have become physically

disabled.  Obviously, a trial court must decide whether or not to shackle a defendant at some

point prior to his trial, but if that decision is made more than a year in advance it is simply not

reasonably sufficient to establish an essential state interest compelling enough to overcome a

defendant's clearly established due process rights.

1
2

## 2. Zero Evidence Was Offered At The Shackling Hearing That Petitioner Had Engaged In Any Threatening Behavior Since 2002

3

The unreasonableness of the state court's decision was compounded by the fact that at the

4

shackling hearing zero evidence was presented that Petitioner engaged in any violent or

5

threatening behavior in the year preceding the shackling hearing. According to the sole witness

6

to testify at Petitioner's shackling hearing, the "basis for [his] recommendation" to shackle

7

Petitioner was a single threatening incident that reportedly took place in October, 2002—over

8

two years prior to Petitioner's trial. (ER Tab B, July 24 Transcript at 13.) The witness testified

9

that Petititioner's prison file reflected that "in October of 2002 [Appellant] made a specific

10

threat." (*Ibid.*) That is the entirety of the evidence provided. There was no elaboration on the

11

alleged October 2002 incident. The witness did not describe the incident; he did not characterize

12

it; he knew nothing about it and provided absolutely no evidence concerning the incident except

13

to say that Petitioner's threat was "specific." (*Ibid.*)[6]

14
15

Based on this record, the state court of appeal upheld the use of shackles by ruling that it

16

"could . . . infer that [Petitioner] had not struck anyone with his hands recently because he had

17

been in restricted custody and in handcuffs whenever escorted outside of his cell." (ER Tab E,

18

COA Decision at 9.)

19
20

This ruling is simply unreasonable. A state court may not deprive Petitioner of his

21

clearly established right to stand trial free of shackles based on an "inference" that he would have

22

engaged in disruptive behavior if only he had the opportunity. In *Deck*, the Supreme Court held

23

that shackling may be justified based on specific evidence of threats to security in an

24

"exceptional case" where there are "indisputably good reasons for shackling." 544 U.S. at 635.

25
26
27
28

---

[6] In 2000, Petitioner had been tried, without restraints and without incident.

The state provided zero evidence of any threatening behavior by Petitioner the year prior to his shackling hearing. Given this record, it was doubly unreasonable for the trial court to fail to conduct any inquiry into Petitioner's prison record in the year between the shackling hearing and Petitioner's trial. In short, because no showing of any threatening behavior by Petitioner in the *two years* prior to his trial, and because during that time Petitioner appeared in court on several occasions without incident, Petitioner's due process right to be tried without shackles was violated and the state court's ruling to the contrary was an unreasonable application of clearly established Supreme Court precedent. *See Deck*, 544 U.S. at 635.

### C.    The State Court's Decision Was Contrary To Clearly Established Law

In *Deck*, the Supreme Court held that a Missouri trial court violated a defendant's due process rights by shackling him during the penalty phase of his death penalty trial.[7] In reversing the defendant's death sentence, the Supreme Court rejected the legal analysis and conclusions reached by the Missouri appellate court below. *Deck*, 544 U.S. at 634-35. Here, the California court of appeal made the exact same errors in evaluating Petitioner's shackling claim as the Missouri court that was reversed in *Deck*. The decision is therefore contrary to clearly established Supreme Court law.

In *Deck,* the Missouri court below found no due process violation because (1) the defendant made no record of the extent of the jury's awareness of the restraints and the defendant never complained that the restraints impeded him from participating in the proceedings; (2) the trial court acted within its discretion in ordering the defendant shackled; and (3) the defendant offered no evidence of actual prejudice resulting from the shackling. 544 U.S. at 634-35. The Supreme Court found each of these arguments "unconvincing." *Id.* at 634.

---

[7] The protections of the Due Process Clause "apply with like force" to the guilt and penalty phases of criminal trials. *Deck*, 544 U.S. at 632.

The state court of appeals decision upholding the use of shackles in Petitioner's case is directly contrary to *Deck* because the court made the same exact errors as the Missouri court which was reversed by the Supreme Court.

First, the state court here held that "nothing in the record suggests that [Petitioner's] restraints were regularly on view to the jury." (ER Tab E, COA Decision at 10.)  The state court also ruled that that "there is no evidence that the restraints inhibited [Petitioner] from taking the stand." (*Ibid.*)  In *Deck*, the Supreme Court rejected identical rationales for affirming the use of restraints in the Missouri case. *Deck* reverses the Missouri court's decision to uphold the use of shackles on the basis that "Trial counsel made no record of the extent of the jury's awareness of the restraints . . . . [and] [the defendant] does not claim that the restraints impeded him from participating in the proceedings." 544 U.S. at 624.  According to the Supreme Court, the relevant question, at least initially, is whether the jury was "aware" of the restraints. *Ibid.*  There is no dispute here that the jurors in Petitioner's case were aware that he was shackled. (ER Tab E, Decision at 10 ("[Peitioner] cannot . . . complain of prejudice resulting from the shackling, insofar as he was responsible for bringing to the jury's attention a matter to which it might otherwise have given no notice or thought.")  Thus, the state court's decision here is contrary to *Deck* on this point.

Second, the Missouri court reversed by the Supreme Court in *Deck* had ruled that the use of restraints was justified based on "evidence of a risk that Deck might flee in that he was a repeat offender" or that he might threaten courtroom personnel. *Deck*, 625 (internal quotation marks omitted).  Here, the state court adopted an identical rationale for upholding the use of restraints on Petitioner.  As discussed above, the trial court's fact-finding concerning Petitioner's threat to courtroom security was woefully inadequate.  The trial court's inquiry was conducted

over a year prior to Petitioner's trial and, even then, the evidence adduced showed zero evidence of violent or threatening behavior in the year prior to the hearing and only one unspecified "threat" made by Petitioner in the three years preceding his trial. The state court of appeal ruled that it could reasonably "infer" that Petitioner would have been more violent if only he had the opportunity. (ER Tab E, COA Decision at 9.) The *Deck* Court rejected a justification for shackles that relied entirely on a trial court's inferences and supposition. 544 U.S. at 635. As in *Deck*, Petititoner's case is not the "exceptional case where the record itself makes clear that there are indisputably good reasons for shackling." *Ibid.*

Third, the Supreme Court ruled in *Deck* that the Missouri court failed to appreciate the inherent prejudice of shackling. Here, the state court ruled that Petitioner was not prejudiced by his shackling because "there is no evidence in the record that the restraints inhibited [Petitioner] from taking the stand" and any attention drawn to the restraints was Petitioner's own fault: "[Peitionter] cannot . . . complain of prejudice resulting from the shackling, insofar as he was responsible for bringing to the jury's attention a matter to which it might otherwise have given no notice or thought." (ER Tab E, COA Decision at 10.)

As in *Deck*, the state court contradicted previously established Supreme Court law that shackling is "'inherently prejudicial.'" *Deck* 544 U.S. at 635 (quoting *Holbrook v. Flynn*, 475 560, 568 (1986)).

> That statement is rooted in our belief that the practice will often have negative effects, but-like the consequences of compelling a defendant to wear prison clothing or of forcing him to stand trial while medicated-those effects cannot be shown from a trial transcript.

*Ibid.* (internal quotation marks omitted). Here, the state court repeatedly refers to the record—particularly the absence of an attempt to testify and absence of any record that Petitioner called

particular attention to his restraints "such as raising his hand to ask a question" (Decision at 10)—as evidence that Petitioner was not prejudiced by his restraints. This holding is illogical and unfair. Far from being a demonstration of no prejudice, the absence of attempts by Petitioner to speak or raise his hand at his trial could be proof that he didn't want to call attention to his restraints. In fact, the state court faults Petitioner's own attorney for calling attention to the restraints in asking for an admonishment to jurors not to consider them. (ER Tab E, COA Decision at 10.) Furthermore, the state court's holding is directly contrary to the clearly established law in *Deck*, which concludes that shackling is "inherently prejudicial" and that a defendant need not establish prejudice from a trial transcript. *Deck*, 544 U.S. at 635.

In sum, the state court of appeals decision upholding the use of shackles in Petitioner's case—based an "inference" that Petitioner would be a security risk following a hearing that took place over a year prior to Petitioner's trial and relied zero evidence of any disruptive behavior in the two years leading up to his trial—was directly contrary to and unreasonable application of the Supreme Court's decision in *Deck*.

### D. Prejudice

There is a conflict among the Circuits on the appropriate prejudice analysis that applies on federal habeas review of a state court's shackling determination—at least when the shackles are visible to the jury. Respondent contends that any error committed by the state court was harmless because there was no substantial injurious effect or influence on the verdict in this case, under the standard applied by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). (Respondent's Brief at 10.) However, the *Brecht* standard conflicts with the more recent

and "deeply rooted" holding in *Deck* that visible shackling is "inherently prejudicial" and that the prejudicial consequence may not be reflected in the transcript of record.  544 U.S. at 635.[8]

In *Larson*, the Ninth Circuit applied the *Brecht* standard in denying as harmless habeas relief for a defendant improperly shackled for two of the six days that he was on trial.  515 F.3d at 1064.  In *Larson*, however, there was some dispute as to whether the shackles were in fact visible to the jury.  *Id.* at 1062 (noting that "*visible* shackling of a criminal defendant during trial undermines the presumption of innocence and the related fairness of the factfinding process and affront[s] the dignity and decorum of judicial proceedings that the judge is seeking to uphold.") (quoting *Deck*, 544 U.S. at 630-31) (quotation marks omitted) (emphasis added).

On the other hand, courts in the Sixth Circuit have addressed the issue more directly and ruled that in light of *Deck* and "the nature and inherent prejudice of shackling," it is Respondent's burden to prove beyond reasonable doubt that the shackling was harmless, pursuant to the standard of review provided by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 24 (1967).  *See e.g. Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005); *Evans v. Voorhies*, 2007 WL 2891003, *25  (S.D.Ohio 2007) ("[T]he Sixth Circuit relied on [the] holding in *Deck* and concluded that the *Chapman* standard was to be applied in deciding whether a shackling error in a non-capital case was harmless on federal habeas review of a state conviction under 28 U.S.C. § 2254.")

Regardless of the proper analysis, Petitioner was prejudiced under any standard of review.  As Respondent acknowledges, Petitioner appeared before the jury in full physical restraints except for an extended chain that allowed him to write.  (Respondent's Memo at 7.)

---

[8] Respondent contends that Petitioner must affirmatively establish prejudice under Ninth Circuit law, citing *Williams v. Woodford*, 306 F.3d 665 (9th Cir. 2002).  But this case was also decided prior to *Deck*.  Respondent cites to no case where visible restraints have been held harmless following the Supreme Court's decision in *Deck*.

*See Larson*, 515 F.3d at 1064 (holding that "[T]he greater the intensity of shackling . . . the greater the extent of prejudice . . . . waist chain[s], leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraint.")  Petitioner did sit behind a desk with a flat panel across the front which blocked the juror's view of his lower extremities, but there is no dispute that the shackles were visible.  (Respondent's Memo at 7.)

The shackling was especially prejudicial in this case because of the particular charges Petitioner faced.  Petitioner was charged and convicted of resisting prison guards.  It's hard to imagine a crime more directly relevant to shackling.  The case law is clear that visible shackling sends a potent message from the judge to the jurors.  *Deck*, 544 U.S. at 630-31; *Larson*, 515 F.3d at 1064.  The constitutional concern is that this message "undermines the presumption of innocence and the related fairness of the factfinding process."  *Deck*, 544 U.S. at 630-31.  At minimum, the message sent to jurors is that the judge is concerned that the defendant is likely to become disruptive and resist courtroom security officers—which is precisely the crime that Petitioner was charged with.

In *Deck*, the Supreme Court found the use of shackles prejudicial during the sentencing phase of a death penalty case because the shackles suggested that the court believed the defendant should be removed from society of capital murder.  *Ibid.*  Of course, the jury had already come to that conclusion when it convicted the defendant.  Nonetheless, the Supreme Court held that the shackles unfairly interfered with the fact-finding process.  "[T]hrough control of defendant's appearance, the State can exert a 'powerful influence on the outcome of the trial.'"  *Id.* (quoting *Riggins v. Nevada*, 504 U.S. 127, 142 (Kennedy, J., concurring).)  By comparison to *Deck,* the use of shackles in Petitioner's sent a message that bore much more

directly on the charges against Petitioner and, in turn, the jury's deliberation.  Thus, Petitioner's

shackling was even more prejudicial.

Respondent counters that the shackles did not influence the jury at all because the

evidence of Petitioner's guilt was "very strong."  (Respondent's Memo at 10.)  Although the

strength of the prosecution's case does not address two of the three constitutional problems with

shackling (*i.e.* interference with attorney-client communication and courtroom decorum, *Deck*,

544 U.S. at 630-31), concerns about prejudice "may be mitigated" if the evidence of guilt is

"overwhelming," *Larson*, 515 F.3d at 1064.

Here, an independent judicial officer, the state Superior Court judge presiding at

Petitioner's preliminary hearing and who heard all the evidence against Petitioner, has already

concluded that the evidence on Petitioner's sole count of conviction (count two) was not only

less than "overwhelming," it was unclear whether a crime was even committed.  (May 22

Preliminary Hearing Transcript at 26.)

Even under the most demanding standard of prejudicial error, Petitioner "must win" if

there is "grave doubt as to the harmlessness" of the shackling.  *Larson*, 515 F.3d at 1064.

Considering the "inherent" prejudicial nature of shackling and the difficulty of proving prejudice

from a cold record described in *Deck*; the particular crime charged against Petitioner; and the

fact that the prosecution's evidence cannot be considered "overwhelming" (even Respondent

avoids this characterization)—the outcome of Petitioner's trial was "influenced" at least in part

by his shackling and thus he qualifies for relief under *Brecht*.

/ /

/ /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   THE COMBINED IMPACT OF THE TRIAL COURT'S ERRORS VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL

For the reasons provided above, the state court violated Petitioner's right to a fair trial and contravened clearly established Supreme Court law by combining unrelated charges into a single trial and by forcing Petitioner to wear full and visible shackles before the jury.  As alleged by Petitioner, the trial court further interfered with Petitioner's constitutional right to a fair trial by failing to instruct the jury that it must agree to the specific offense committed by Petition and by instructing the jury on a theory of culpability absent from the documents charging Petitioner in this case.  (*See* Petition at paragraphs VII, X, and XI (citing *inter alia Brown v. Louisiana*, 447 U.S. 323 (1980) (due process requires at least a majority of six jurors to convict); and *Cole v. Arkansas*, 333 U.S. 196 (1948) (due process requires that a defendant receive ample notice of the charges against him).)

Respondent acknowledges that the state courts never addressed this Petitioner's cumulative error argument, (Respondent's Memo at 15), thus this court must review the claim based on an "independent review of the record," *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  Respondent also recognizes that, even if the trial court errors were not independently prejudicial, Petitioner is entitled to habeas relief and a new trial if there is grave doubt that the combined impact of the state court decisions influenced the jury's verdict.  (Respondent's Memo at 15 (citing *Parle*, 505 F.3d at 927).)

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle*, 505 F.3d at 927.  "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Ibid.*  The question on federal habeas review is whether the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"the combined effect of individually harmless errors renders a criminal defense far less persuasive than it might [otherwise] have been." *Ibid.*

Petitioner was a prisoner at Pelican Bay State Prison at the time he committed and was tried for these crimes. The trial was slapdash in many respects. The presumption of guilt was particularly palpable from the multiple unrelated charges Petitioner faced and his shackling. Petitioner had to defend himself against charges that he assaulted a guard in count one at the same time as he defended himself against unrelated charges that he resisted other guards four days later in count two. On top of that burden, Petitioner was in shackles the whole time. The unspoken message to jurors was unmistakable—Petitioner is dangerous (at worst) and a troublemaker (at best). Either way, he is guilty. Petitioner only asks for a fair trial. The trial court's decision to try counts one and two together, along with its improper shackling determination undoubtedly rendered his defense less persuasive and at least influenced the jury's verdict against him. He is therefore entitled to habeas relief for the combined errors at his trial. *Parle*, 505 F.3d at 927.

## **CONCLUSION**

For the forgoing reasons, Petitioner is entitled to relief.

DATED: June 27, 2008                              Respectfully submitted,

                                                 **/s/ Michael Romano**
                                                 **MICHAEL S. ROMANO**
                                                 **Attorney for Petitioner**
                                                 **Travell Brown**

PETITIONER'S TRAVERSE                    - 22 -