United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TRAVELL BROWN,

Petitioner,

v.

ROBERT HOREL,

Respondent.

/

No. C 08-00853 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner is currently serving a sentence at Pelican Bay State Prison in Crescent City, California. In state court, he was charged with two counts — battery on a non-inmate and resisting an executive officer. The battery charge resulted in a mistrial, but petitioner was convicted of resisting an officer. He was sentenced to three years imprisonment, to be served consecutively with a sentence for an unrelated drug charge. Petitioner now seeks habeas relief pursuant to 28 U.S.C. 2254, claiming that his conviction was obtained in violation of the Fifth, Sixth, and Fourteen Amendments. For the reasons stated below, his petition for writ of habeas corpus is **DENIED**.

## STATEMENT

In September 2002, Officer Tammy Hill escorted Mr. Brown from his cell to a holding cell so he could use an asthma inhaler. When he arrived at the holding cell, he refused to use his inhaler and asked to see a sergeant. Officer Hill notified Sergeant Wright. As she passed Mr. Brown's holding cell, Mr. Brown said to her, "Fuck you, bitch," and spat on her.

United States District Court
For the Northern District of California

The spittle landed on her face, neck, and vest. Officer Hill went to the medical clinic and, under the advice of the attending nurse, washed her face with anti-bacterial soap.

Four days later, Mr. Brown was being escorted to the shower. Officer Joann Morrison opened Mr. Brown's cell door to allow Officers Waycott and Terry Gavin to handcuff him before taking him to the shower. Prison protocol required inmates to back out of their cells. When Mr. Brown faced forward, the officers instructed him, "Turn back around. Face the back of the cell. Come out backwards." Mr. Brown responded to Officer Waycott, "Fuck you, bitch. I'll come out any way I want to." He then proceeded to the adjacent shower.

Officer Morrison notified her supervisor about Mr. Brown's remark. Sergeant Tom Bosley and Officers Brad Holt and Lewis Hall responded. Officer Hall handcuffed Mr. Brown. The three officers ordered him to turn around, face the rear wall of the shower, and back out. Mr. Brown turned around, faced the officers, and said, "You don't tell me what to do. I'm not your son." He refused further orders to turn around and face the rear wall. The officers then grabbed him to turn him around, and Mr. Brown began twisting, kicking, and struggling to escape their hold. Officer Hall pushed him onto the ground. Another officer held Mr. Brown's legs to prevent kicking while another officer put on leg irons..

After restraining Mr. Brown, Officer Hall and Sergeant Bosley helped him to his feet and took him to the rotunda to determine if he sustained any injuries. When the medical technician tried to examine him, he stated, "Fuck you bitch. I ain't talking to you. Just get away from me." Officers Hall, Holt, and Hoyt Walker took him back to his cell. Officer Walker removed Mr. Brown's leg irons. Mr. Brown then stuck his foot in the cell doorway to prevent the cell door from closing. Officer Walker pushed Mr. Brown's foot back into his cell and was able to close the cell door. Although he tried to pull his handcuffs into the cell, Officers Hold and Hall were able to control his hands by removing the handcuffs through the cuff port (a small opening in the cell door). This entire incident lasted twenty to thirty minutes.

In May 2003, the Del Norte County district attorney charged Mr. Brown with battery by an inmate on a non-inmate, in violation of Cal. Penal Code 4501.5 (Count One) for the spitting incident, and with resisting an executive officer, in violation of Cal. Penal Code 69 (Count

Two) for the shower incident. In September 2003, Mr. Brown moved to sever the two counts on the grounds that (i) he would be prejudiced by having the two counts tried together if he intended to present separate defenses as to each count; (ii) the jury might use the evidence of one crime to infer criminal disposition in the other crime; (iii) the jury might cumulate the evidence of the various crimes and find guilt when, if the crimes were tried separately, it would not find guilt; and (iv) convenience was an insufficient basis for trying the two counts together. The prosecutor did not object to Mr. Browns' motion. Nonetheless, the trial court denied severance, concluding that the two charges were "of the same class" and occurred "under similar circumstances" (Pet. Exh. C at 7).

Petitioner had a one-day trial in November 2004. The jury was unable to reach a verdict on Count One, and the district attorney dismissed the charge. Mr. Brown was, however, convicted of Count Two and sentenced to three years' imprisonment, which he had to serve consecutively with a thirteen-year sentence for an unrelated drug charge.

Mr. Brown appealed his conviction to the First Appellate District of the California Court of Appeal. He asserted that the trial court erred when: (i) it decided to jointly try Counts One and Two; (ii) it ordered him to appear before the jury in shackles; (iii) it failed to provide a specific unanimity instruction to the jury despite the state's "multiple act" theory of the case; (iv) it instructed the jury on two possible theories of culpability even though the information alleged only one theory; and (v) the cumulative effect of these errors deprived him of a fundamentally fair trial. The state appellate court affirmed his conviction in April 2006 and the California Supreme Court denied review in November 2006. Petitioner did not seek certiorari review in the United States Supreme Court. On February 7, 2008, Mr. Brown filed the instant petition in federal court.

**ANALYSIS**

The Antiterrorism and Effective Death Penalty Act governs district court review of petitions for writs of habeas corpus. Persons in custody pursuant to a state-court judgment may be provided habeas relief by a federal court if they are held in violation of the Constitution, laws, or treaties of the United States. A petitioner must establish that, for any claim adjudicated

United States District Court
For the Northern District of California

on the merits, the state-court decision either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d).

The phrase "clearly established" in AEDPA refers to the holdings, as opposed to the dicta, of decisions of the Supreme Court as of the time of the relevant state court decision; in other words, "clearly established Federal law" is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). A state court's decision is "contrary to" federal law if it fails to apply the correct Supreme Court authority to a question of law or if it applies such authority incorrectly to a case involving facts "materially indistinguishable" from those in the controlling decision. A state court's decision involves an "unreasonable application" of federal law if it applies the governing Supreme Court rule in a way that is objectively unreasonable. *Williams v. Taylor,* 529 U.S. 362, 405, 409–10 (2000). The Ninth Circuit has held that, in AEDPA cases, determinations of factual issues by a state court must be presumed correct unless they are the result of an "unreasonable determination." *Taylor v. Maddox,* 366 F.3d 992, 999–1000 (9th Cir. 2004). This presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. 2254(e)(1).[1]

**1. WERE PETITIONER'S DUE PROCESS AND FAIR TRIAL RIGHTS VIOLATED BY THE TRIAL COURT'S JOINDER OF COUNTS ONE AND TWO?**

Mr. Brown argues that the state court's decision to try the two counts in the same trial was contrary to or involved an unreasonable application of the clearly established federal law (*i.e.*, his Fifth and Fourteenth Amendment rights). "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendants his Fifth Amendment right to a fair trial."

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

United States District Court
For the Northern District of California

*United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). "In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). According to petitioner, the state court's decision was unreasonable on two main grounds: the evidence on each count was not cross-admissible, and there was prejudicial "spillover."

**A. Cross-Admissibility.**

Petitioner first argues that there was constitutional error because the prosecutor conceded that the evidence was not cross-admissible. He cites *Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir. 1998), for the proposition that a due process error can be found when "[t]he State concedes the absence of cross-admissibility, the lack of common modus operandi, and the possible prejudicial effect of joinder. Thus, if we were to adopt the State's theory, joinder would never be improper."

This order disagrees, first noting that the prosecutor did *not* concede that there was no cross-admissibility of evidence. Rather, he called it a "close" case where there was "the same kind of behavior within a short period of time." The actual exchange between the prosecutor and the state trial court was as follows (Pet. Exh. C at 2, 4):

> Defense: . . . [T]here's a notice of motion and motion for bifurcated jury trial on as well as a motion to separate counts.
>
> Court: All right, the counts — battery by an inmate on a non-inmate allegedly occurring on September 25th of 2002, resisting executive officer September 29th. And there's special allegations. And that's it. It's those two counts?
>
> Defense: Yes, your Honor.
>
> State: I don't know if we've responded to that but, if not, if I could have a second to look at something I might not even object to that.
>
> Defense: We can continue it to next week if you like.
>
> State: Actually it will just take a minute. Your Honor, the officers are different. I can't say it's the same officers but it's the same kind of behavior within a short period of time. Judicial economy I would think would be a reason for one trial. On the other hand, that would give me two shots of convicting him with different juries, so if the Court wants to separate them I really don't have a huge objection.

> Court: You want to just stipulate to the granting of the motion then?
>
> State: Not really stipulating, but this is as close — this is one of the closer ones that I've seen recently, that there would be — (nodding) — perhaps cause.
>
> * * *
>
> Defense: Well, the severance motion we can hear now or — we can move it to next week. It's up to the Court.
>
> Court: All right. Well, it sounds as though the People are not opposing it.
>
> State: Not strongly.
>
> Court: Well — what do you want me to do, grant it or not?
>
> State: They're the same class of offense in a short period of time. I'd just as soon have one jury and save the taxpayers some money. On the other hand, I can't honestly tell you this is the same fact pattern and the same witnesses. I don't — I do have interlocking evidence as far as the enhancements are concerned. That would be exactly same. I do not have interlocking witness testimony, your Honor. It's a close call. But —
>
> Court: Well —
>
> State: — it's not as close as some of the cases.

The state trial court noted that the severance motion was based on two counts of "battery on an officer, resisting an officer" that were four days apart (*id.* at 7). He ultimately denied the motion, saying that the two counts "appear to be cases of the same class. Under similar circumstances. I'm going to deny the severance emotion, and the matter — and the matter will be tried as a single trial" (*ibid.*).

The California appellate court held that the trial court's denial of petitioner's severance motion was not an abuse of discretion, nor did the joinder cause gross unfairness at petitioner's trial. Although petitioner argues that the state appellate court improperly created a *post hoc* rationale justifying joinder, despite the prosecutor's alleged concession. As stated, this order finds that the prosecutor did *not* concede that the evidence was not cross-admissible, nor did the state trial court conclude so. Just as the trial court said that the two counts appeared to be cases of the same class under similar circumstances, the California Court of Appeal similarly reasoned (Pet. Exh. E at 5**)**:

> The two offenses charged in the information were sufficiently similar to be relevant evidence as to his repeated plan or design in engaging in disruptive conduct. According to the officers' incident reports and the preliminary hearing testimony, both offenses involved assaultive acts on correctional officers during the course of escorting appellate to or from personal health/hygiene-related matters (asthma therapy, shower), resistance to directives from the officers, and disparaging comments to them. The common factors of both incidents suggest appellant engaged in a pattern of acts intended to thwart authority and undermine officer control by a combination of angry verbal, and physically abusive and defiant, outbursts. Thus, the evidence was cross-admissible on this theory.

Both the state trial court record and appellate court's reasoning reflect cross-admissibility of the evidence.

Moreover, Mr. Brown's reliance on *Bean* is misplaced, however. The Ninth Circuit in *Bean* stated, "[W]e are mindful that prejudice generally does not arise from joinder *when the evidence of each crime is simple and distinct, even in the absence of cross-admissibility*. This determination hinges on the assumption that, if properly instructed, a jury can compartmentalize the evidence, rather than considering it cumulatively." *Id.* at 1085 (emphasis added). The court of appeals further noted that *Bean* did not present a case "where acquittal on one joined charge establishes that the jury successfully compartmentalized the evidence . . . [In *Bean*] no such acquittal offered affirmative evidence of the jury's ability to assess the [two offenses'] evidence separately." *Id.* at 1085–86. In the instant action, however, the situation was different. The jury was hung on Count One and convicted Mr. Brown on Count Two, demonstrating that the jury successfully compartmentalized the evidence. Furthermore, in *Bean*, the state not only conceded the lack of cross-admissibility; it also admitted the lack of a common modus operandi and prejudicial effect. Again, that was not the case here. As a result, the state court's decision was not unreasonable on the ground of cross-admissibility.

**B. Possibility of Prejudicial "Spillover."**

Petitioner further argues that there was a prejudicial spillover effect. The Ninth Circuit has stated, "Undue prejudice may also arise from the joinder of a strong evidentiary case with a weaker one. The reason there is danger in both situations is that it is difficult for a jury to compartmentalize the damaging information." *Sandoval v. Calderon*, 241 F.3d 765, 772

(9th Cir. 2000). Mr. Browns says that at a preliminary hearing on May 23, 2003, the state trial court stated that while probable cause supported Count One, it was a much closer case as to whether the crime was committed as alleged in Count Two. Because the state trial record showed that the evidence was tenuous with respect to Count Two, petitioner argues, there was clearly prejudicial spillover during trial that resulted in petitioner's conviction.

Again, this order finds that petitioner's argument is unconvincing. That the evidence for one count may have been stronger than the evidence for another count does not render spillover an inevitable conclusion. Moreover, the trial court found that there was sufficient evidence to go forth with both counts, despite its comment that there was a "much closer case" with respect to Count Two (Resp. Exh. 2, 05/23/2003 Tr. at 26): "I do find that there is sufficient evidence to believe that the crime alleged in Count 1, being battery by an inmate upon a non-inmate in violation of Penal Code Section 4501.5 did occur, and that the defendant is the person who may have committed the crime. With regard to Count 2, I think it's a much closer case as to whether the crime was committed, but there was sufficient evidence that there was force used to resist Sergeant Bosley and his fellow officers. And so I find that there's evidence that the defendant is the one who committed that crime, violation of Penal Code Section 69. He is therefore held to answer on both charges" (Resp. Exh. 2 at 26).

Petitioner further asserts that the prosecutor's closing arguments caused greater spillover. The prosecutor argued that the jury should draw "the reasonable inference when the guy keeps repeating, 'F- - - you,' he did use the same words four days later. It's a similar M.O. He apparently hadn't gotten over whatever it was and got it out of his system. And he repeats the same verbal abuse down to the same verb. I think that's a reasonable way to look at it" (Pet. Exh. D at 170). Petitioner contends there was no actual evidence produced at trial that the incidents were related, thereby prejudicing him.

This order disagrees. Contrary to petitioner, there was little "spillover" effect. The Ninth Circuit has held "that the failure of the jury to convict on all counts is 'the best evidence of the jury's ability to compartmentalize the evidence.'" *Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000). *See also United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir.

1987) ("That the jury was unable to agree on a count rather than acquit does not undermine this principle"). Here, the jury convicted Mr. Brown of Count Two but was unable to arrive at a unanimous verdict on Count One. The different treatment of the two counts shows that there was no "spillover" effect of the evidence in Count Two unfairly strengthening the evidence in Count One.

Petitioner also attempts to rely on *Bean* again, where the Ninth Circuit reversed in part for improper joinder of charges. This decision is inapposite. In *Bean*, a pre-AEDPA case, the court of appeals reviewed the lower court's decision *de novo* rather than with deference (as mandated by AEDPA). The circumstances were also distinguishable because, in *Bean*, "the evidence for each case was not admissible in the other," and the petitioner was convicted on all counts (showing the jury's inability to compartmentalize evidence). *Bean*, 163 F.3d at 1084–85. Here, there was no prejudice so great as to deny Mr. Brown his right to a fair trial.

### 2. WERE PETITIONER'S DUE PROCESS RIGHTS VIOLATED WHEN HE WAS ORDERED TO APPEAR BEFORE THE JURY IN SHACKLES?

Mr. Brown further argues that the trial court's order to place him in full restraints in plain view of the jury, "absent an adequate inquiry or manifest need" violated his Fifth and Fourteenth Amendment due-process and fair-trial rights. "Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system . . . This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play." *Estelle v. Williams*, 425 U.S. 501, 504–05 (1976).

In July 2003, more than year before petitioner's trial, the trial court heard the prosecution's motion to shackle petitioner in full restraints during the trial. According to petitioner, the trial court "assumed from the outset that Petitioner should be shackled in some

United States District Court
For the Northern District of California

way" and relied on the insufficient and flawed testimony of Sergeant Ken Thomas (Pet. 5). Mr. Brown argues that Sergeant Thomas, who recommended that Mr. Brown be placed in full restraints during the trial, could testify to only one instance of unruly behavior by petitioner in October 2002. Although Sergeant Thomas could not recall the precise time or location of the "specific threat," the trial court still granted the prosecutor's motion. The California Court of Appeal affirmed the trial court's decision. This holding, Mr. Brown contends, was contrary to and involved an unreasonable application of clearly established federal law.

Again, petitioner's argument is unpersuasive. The Supreme Court has held that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, *unless* that use is 'justified by an essential state interest' — such as the interest in courtroom security — specific to the defendant on trial." *Deck v. Missouri*, 544 U.S. 622, 624 (2005). This order holds that the state court's decision was not unreasonable. Placing Mr. Brown in full restraints during his trial was justified by an essential state interest, namely the strong interest in courtroom security.

The California Court of Appeal summarized the evidence introduced during the hearing on the district attorney's motion to shackle Mr. Brown (Pet. Exh. 5 at 6–7):

> [Sergeant Thomas] reviewed appellant's Department of Corrections file, which contains all information concerning appellant's commitment offenses and in-prison activity. The Department uses a point system to classify inmates by level of security. An inmate reaches level 4, the highest level, at 53 points. Appellant had received 264 points since returning to the Department of Corrections three years earlier, including 22 citations for serious rules violations. He had received multiple citations for batteries on staff and peace officers, and multiple citations for willful delay, refusing orders, threats of force or violence against public officials, and gassing peace officers with an unknown liquid. He also had multiple citations for destruction of state property, and single citations for arson, possession of inmate-manufactured alcohol and possession of contraband. Given this history, Sergeant Thomas had serious concerns for the security of the courtroom personnel. Sergeant Thomas acknowledged that appellant had not attacked anyone with his hands in the past year, but observed that he had been housed in the SHU (Security Housing Unit), where policy requires him to be in handcuffs any time he is moved.

The trial court granted the district attorney's motion. It did, however, order "as a precaution to avoid any possibility of this prejudicing the minds of the jurors, order that the

court staff will bring the jurors and prospective jurors and the defendant in and out of the courtroom in such a way as to minimize the likelihood that the jurors will see that the defendant is in physical restraints. In addition, there's a solid panel across the front of the counsel table which blocks the view of the jurors while they're seated in the jury box of the defendant's lower body, and — and although it is possible that they will see to some degree that he has physical restraints on, it should be — rather unobstrusive" (Resp. Exh. 2, 7/24/2003 Tr. at 19).

Mr. Brown was then appointed new defense counsel, who moved to allow Mr. Brown to appear at trial without restraints in September 2004. The trial court stated that his original ruling remained in place but that he would modify the shackling order if there were a change of circumstances. There was no further discussion by the new defense counsel. The trial court also heeded defense counsel's request to instruct the jury: "The fact that physical restraints have been placed on Defendant Brown must not be considered by you for any purpose. They are not evidence of guilt, and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why restraints have been used. In determining the issues in this case, disregard this matter entirely" (Resp. Exh. 1 at 618).

The California Court of Appeal found no abuse of discretion in the trial court's July 2003 shackling order. It explained that Sergeant Thomas had provided detailed information regarding petitioner's "lengthy documented history of threats assaultive behavior, and refusal to obey authority" (Pet. Exh. E at 9). Furthermore, the state trial court "did not make its determination based simply on Sergeant Thomas's opinion or unsubstantiated comments. It was presented with a factual basis from which it could reasonably infer that [Mr. Brown] posed a potential threat of disruption to any figure of actual or perceived authority in the criminal judicial system, *e.g.*, judge, attorneys, jurors, bailiffs, court reporters. It could also infer that [Mr. Brown] had not struck anyone with his hands recently because he had been in restricted custody and in handcuffs whenever escorted outside his cell. Furthermore, [Mr. Brown's] first attorney, Schlotan, challenged only the level of restraint, not that some form of restraint was warranted, and his second attorney, Zipperer, did not present any new facts as to why, in the intervening year, shackling was no longer justified" (*ibid.*).

Petitioner argues that the state court's decision upholding the use of shackles was unreasonable because it relied on stale information. The original hearing on the state's motion to shackle Mr. Brown took place over one year prior to his trial. In the interim period, petitioner "could have learned to behave; he could have undergone had [sic] a spiritual conversion; or he could have become physically disabled" (Trav. 12). Moreover, the basis for the shackling was "a single threatening incident that reportedly took place in October, 2002," which was two years prior to petitioner's trial.

Again, this order finds petitioner's argument unconvincing. The basis for shackling was not limited to a single incident that took place in October 2002. According to the prison point system, Mr. Brown was classified as well within the highest level of security due to numerous disciplinary infractions. Given that the trial court held a full hearing on the shackling issue, that Sergeant Thomas provided ample evidence of Mr. Brown's security risk, that the trial court was willing to entertain modifying the shackling order (but defense counsel never brought up the issue again), that the trial court instructed the jury to disregard the restraints, and that the state appellate court carefully considered all of these factors, this order holds that the use of shackles was justified by an essential state interest in maintaining courtroom security.

Petitioner also relies upon *Deck* to assert that his shackling was not justified by the circumstances and therefore offended due process. The circumstances in the instant action differ from that in *Deck*, however. This order does not dispute that a trial court may not routinely place defendants in visible restraints. But as the Supreme Court recognized, "[t]he constitutional requirement against routinely placing defendants in physical restraints visible to the jury] is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns that may call for shackling. In so doing, it accommodates the important need to protect the courtroom and its occupants. But any such determination must be case specific; that is to say, it should reflect particular concerns, say special security needs or escape risks, related to the defendant on trial." *Deck*, 544 U.S. at 633. The Supreme Court held in *Deck* that shackling of the defendant was improper because (i) the jury was aware of the shackles; (ii) the trial judge made no formal or

United States District Court
For the Northern District of California

informal findings for requiring the shackles; and (iii) shackling is "inherently prejudicial." As a result, "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation." *Id.* at 634–35. In the instant action, however, the state court did give an adequate reason for its decision to shackle Mr. Brown. It tried to minimize the likelihood of jurors seeing the restraints. It instructed the jury to disregard them. Accordingly, there was no contrary or unreasonable application of clearly established federal law here.

**3. WERE PETITIONER'S DUE PROCESS AND TRIAL-BY-JURY RIGHTS VIOLATED WHEN THE TRIAL COURT FAILED TO PROVIDE A SPECIFIC UNANIMITY INSTRUCTION?**

Mr. Brown argues that the trial court should have given the jury a unanimity instruction for Count Two (shower incident). Because the trial court failed to do so, petitioner contends, the prosecution's burden of proof was lowered. "[T]he Due Process Clause of the Fourteenth Amendment prohibits the State from making use of jury instructions that have the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of intent in a criminal prosecution." *Francis v. Franklin*, 471 U.S. 307, 326 (1985).[2] According to petitioner, the district attorney alleged several discrete acts against multiple officers, upon which the jurors could have based their verdict. These acts included: when petitioner refused to walk backward out of his cell; when petitioner refused to turn around upon exiting the shower; when petitioner pulled away from the officers after refusing to turn around; when petitioner refused medical treatment; when petitioner stuck his foot in the cell door to prevent officers from locking him in; and when petitioner tried to pull the handcuffs through the cuff port in his cell door. The trial court therefore erred, petitioner says, in not instructing the jurors that they had to all agree on which act constituted petitioner's violation in Count Two. Moreover, Mr. Brown asserts that the trial court's error in failing to give a specific unanimity instruction violated his Sixth Amendment right to a unanimous verdict of at least six jurors. "The concurrence of six jurors was constitutionally required to preserve the substance of the

---

[2] "The question is whether these instructions, when read in the context of the jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." *Francis*, 571 U.S. at 309 (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

United States District Court
For the Northern District of California

jury trial right and to assure the reliability of its verdict." *Brown v. Louisiana*, 447 U.S. 323, 334 (1980). *See also Burch v. Louisiana*, 441 U.S. 130 (1979).

This order holds that a unanimity instruction was not required. The prosecution's burden of proof was not lowered. "Submitting a multi-theory crime to the jury without requiring unanimity on any one predicate theory is not a constitutional violation." *Evanchyk v. Stewart*, 340 F.3d 933, 937 n.1 (9th Cir. 2003) (citing *Schad v. Arizona*, 501 U.S. 624, 644–45 (1991)). Furthermore, the California Court of Appeal noted that it was clear that Count Two referred to the act in the shower — not the acts before or after. The charging document specifically alleged that Mr. Brown resisted Sergeant Bosley and Officers Holt and Hall. These officers were not involved until they were asked to escort him from the shower back to his cell. The prosecutor also stated during the closing argument, "Count Two happened in this place, the shower." The other acts referred by the prosecutor showed petitioner's mental state at the time of the shower incident. Defense counsel himself argued in his closing argument, "[A]s far as Count Two goes . . . He's taken to the shower where all of . . . this incident happens" (Resp. Exh. 6 at 13). Finally, petitioner's reliance on *Brown* and *Burch* is misplaced. Those decisions established that a conviction of a non-petty criminal offense by a non-unanimous six-person jury violated an accused's right to trial by jury guaranteed by the Sixth and Fourteenth Amendments. Here, a jury reached a unanimous verdict on Count Two. The state court's decision was not a contrary or unreasonable application of federal law.

### 4. WERE PETITIONER'S DUE PROCESS RIGHTS VIOLATED WHEN THE TRIAL COURT ALLEGEDLY EXPANDED THE THEORY OF CULPABILITY IN ITS INSTRUCTIONS TO THE JURY?

Petitioner asserts that his due process rights were violated "when the trial court instructed the jury that it could convict him of acts with which he had not been charged prior to trial" (Pet. 8). "A defendant's right to notice of the charges against which he must defend is well established." *Gray v. Netherland*, 518 U.S. 152, 167 (1996). Count Two charged that "[o]n or about September 29, 2002, [petitioner] did willfully, unlawfully, and unknowingly resist an executive officer to-wit: Sgt. Bosley, Officer Holt and Officer Hall, in the performance of his duty by the use of force and violence" (Resp. Exh. 1 at 16). The trial court, however,

United States District Court
For the Northern District of California

instructed the jury that: "The defendant is accused in Count Two of having violated section 69 of the Penal Code, a crime. Every person who willfully attempts by means of any threat or violence to deter or prevent an executive officer from performing any duty imposed upon that officer by law *or* who resists by force or violence an executive officer in the performance of his or her duty is guilty of a violation of section 69 of the Penal Code, a crime" (Resp. Exh. 2, 11/4/2004 Tr. at 151) (emphasis added). Petitioner argues that the trial court failed to instruct jurors that they had to agree on a single act of illegal conduct. Otherwise, he says, petitioner was convicted of uncharged conduct, in violation of his Fourteenth Amendment due process rights. Essentially, petitioner argues that he was only charged with resisting an executive officer by the use of force and violence, but the instructions made it sound like he could be convicted of deterring or preventing an officer from performing his job *or* of resisting by force and violence.

The California appellate court held that there was no due-process violation. "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief . . . The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' . . . It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991).

Reviewing the instruction in the context of the instructions as a whole and the trial record, the California Court of Appeal concluded that it was not reasonably likely that the challenged instruction was misapplied. *First*, the trial court started the trial by instructing the jury that Mr. Brown was charged with "resist[ing]" the officers "by use of force and violence" (Resp. Exh. 2, 11/08/2004 Tr. at 12–13). *Second*, after the evidence was presented, the trial court instructed the jury that "[i]n order to prove this crime each of the following elements must be proved: One, a person knowingly resisted an executive officer in the performance of his or

United States District Court
For the Northern District of California

her duty; and Two, the resistance was accompanied by means of force or violence" (*id.* at 151–52). *Third*, another instruction was that "[y]ou could find the defendant guilty of the crime of resisting an executive officer by force and violence. You could find the defendant guilty of the lesser count of resisting or delaying a correctional officer. Or you could find him not guilty" (*id.* at 172). In other words, Count Two distinguished resisting an executive officer by force and violence. *Fourth*, in his closing arguments the district attorney said to the jury (*id.* at 163–64):

> As to Count Two, which is the resisting of an executive officer . . . What would the law require in that regards? It would require the victim of this to be an executive officer. It is charged that [Mr. Brown] resisted Sergeant Bosley, Officer Holt and Officer Hill. I believe the instruction tells you a correctional peace officer is an executive officer. And it would require that a person, in this case the defendant, knowingly — knowingly. And what we said before and all the ways we know he resisted an executive officer in the performance of his duty. And it was done by means of force or violence. You've heard the testimony. You'll have to decide, is that sufficient force the way he resisted for 25 to 45 minutes — whatever you decide it was. Does that suffice to satisfy the resisting an executive officer? I suspect it does.

The prosecutor did not suggest that a conviction could rest on the deterrence or prevention of duties theory. In sum, this order finds that the state appellate court's conclusion that there was no reasonable likelihood of the jury being misled was not a contrary or unreasonable application of federal law.

### 5. DID THE CUMULATIVE EFFECT OF THESE ALLEGED ERRORS DEPRIVE PETITIONER OF HIS DUE PROCESS AND FAIR TRIAL RIGHTS?

Mr. Brown finally argues that the cumulative effect of the aforementioned problems deprived him of his due process and fair trial rights. "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). In *Parle*, there were numerous trial errors that weakened the petitioner's case and bolstered the state's case: "[*A*]*ll* of the improperly excluded evidence in [the petitioner's] case — *i.e.*, expert testimony about the effects of a bipolar manic episode on one's state of mind, the victim's previous threats and history of violence, and [the petitioner's] father's testimony about

[the petitioner's] appearance and demeanor immediately before and after the crime-supported [the petitioner's] defense that he lacked the requisite state of mind for first-degree murder; at the same time, all of the erroneously admitted evidence — *i.e.*, [the petitioner's] psychiatrist's testimony in violation of privilege about [the petitioner's] minor bipolar disorder and relative stability in treatment, and evidence of [the petitioner's] violent threats to a police officer-undermined [the petitioner's] defense and credibility and bolstered the State's case. The combined effect of these errors . . . rendered [the petitioner's] defense 'far less persuasive than it might have been,' and therefore had a 'substantial and injurious effect or influence on the jury's verdict,' violating [the petitioner's] due process rights." *Id.* at 930.

As stated, there were no such cumulation of errors during the trial here. This order agrees with respondent that habeas relief is unwarranted.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: July 15, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE